**John BILY, Appellant/Appellee,**

v.

**OMNI EQUITIES, INC., Don Smith, and W.T. Smith, Appellees/Appellants.**

**No. B14–86–779–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 23, 1987.

Rehearing Denied May 21, 1987.

608

Patricia Hair, Houston, for appellant/appellee.

Jeffrey A. Lehmann, Houston, for appellees/appellants.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

John Bily sued Don Smith, W.T. Smith, and the Smiths' land development corporation, Omni Equities, Inc., for injunctive relief and damages alleging that the defendants had impounded the natural flow of surface waters from Bily's property in contravention of common law and section 11.-086 of the Texas Water Code. A jury found in favor of Bily and awarded actual and punitive damages. The trial court entered judgment that Bily recover actual damages, but disallowed recovery of punitive damages. Bily appeals the court's denial of punitive damages and Omni and the Smiths appeal the award of actual damages. We sustain Bily's point of error and overrule the cross-points brought by Omni Equities, Inc., and the Smiths.

The properties involved are located in the City of Jersey Village between Jersey Lake on the north and White Oak Bayou on the south. Jersey Lake is a manmade reservoir with a six-to eight-foot-high dam on its south shore. Bily bought his lot in 1977 or 1978 and built his home in 1978. The lot is heavily wooded and extra large, more than ten times the size of a standard residential lot. According to the testimony of a person who had moved onto the land in 1938, when it was a dairy farm, the natural drainage of the Bily property was from the front to the rear, across the land now owned by Omni Equities, Inc. (the Omni property) and into White Oak Bayou. When Bily built his home, the Omni property, which lies between the lake dam and the bayou, was platted as reserve acreage because the strip was too narrow to be developed.

Omni Equities, Inc., is a corporation engaged in land development. Don Smith is its president. W.T. Smith owns 95 percent of the corporation's stock and oversees the construction of improvements and marketing of lots. Don Smith first acquired the reserve acreage in 1977. He sold it to Omni Equities in 1984. In 1984 and 1985 replatting plans were drawn and approved and the streets, utilities, storm sewers, etc., were completed. Sometime in the late summer or fall of 1985 Bily and his neighbor advised Omni through one or both of the Smith brothers that the fill dirt placed on the Omni property was causing water to back up into their backyards. Omni's contractors had placed up to 18 inches of fill along the property line with Bily so that there would be a 1 percent grade from the back of the Omni lot to the front street. City of Jersey Village ordinances require a 1 percent grade from back to front unless the lot is along the bayou. Bily's property was graded so that the front yard drains into the street, but the backyard was left ungraded and surface waters followed their natural course.

In August 1985 Bily's attorney demanded in writing that Omni alleviate the drainage problem, but under the advice of their attorney, Omni and the Smiths refused to do anything to solve the problem. Bily filed suit and obtained a temporary injunction in early 1986 ordering Omni to dig a ditch at the rear of the lot abutting Bily's lot so that Bily's property would drain. After the temporary injunction, W.T. Smith filed some 20 criminal complaints asking the city to fine Bily $200 a day for violating the city ordinance that requires lots to drain from back to front. The city took no action on the complaints.

Throughout the controversy and on appeal Omni and the Smiths have contended that the city ordinances on drainage and grade of lots override any obligation arising out of the water code and common law. Under 46 cross-points of error they argue that their compliance with city codes provides a complete defense to Bily's actions for damages and that Bily's alleged violation of the ordinances makes him negligent per se and precludes him from recovering damages. After a careful analysis of the law, we have concluded that all of the cross-points are without merit. We have also concluded that Bily is entitled to an award of punitive damages as found by the jury.

Section 11.086 of the current water code provides in part:

(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

Tex.Water Code Ann. § 11.086 (Vernon Supp.1987).

The earliest statutory predecessor to section 11.086 was enacted in 1915. That statute was omitted from the codification in 1925, but was reenacted in 1927. *See Kraft v. Langford,* 565 S.W.2d 223, 228 (Tex.1978); *Miller v. Letzerich,* 121 Tex. 248, 49 S.W.2d 404, 407 (1932). The statute adopted the civil law rule of "natural easements." *Kraft v. Langford,* 565 S.W.2d at 229. Under that rule a higher landowner could not burden adjacent lands with surface water he accumulated or discharged except in the same manner in which it would naturally flow; and the lower estate was obliged to receive the surface waters as they naturally flowed. *Id.* at 228.

We quote the following passages to emphasize the fundamental nature of the right Bily sought to enforce in his lawsuit.

These rights of the owners of estates under the civil law are appurtenant to and a part of the land itself, and passed to them with the grants. The right of the owner of the upper estate to have the surface waters falling thereon to pass in their natural condition on to the lands of the lower estate is a servitude or natural right in the nature of an easement over the lower estate of his neighbor. It is a right of property, which inheres in the estate entitled to its benefit independent of any contractual or prescriptive right. The right comes clearly within the accepted definitions of and has every essential quality of an easement, although,

as stated before, it arises out of nature itself, and, as we have seen, was adopted and enforced by the doctrines of the civil law. The right, being an easement, is a part of the realty itself, an interest in land, and is governed by the rules of law with reference to real property. The right, being a natural easement, arising out of the relationship of the dominant and servient estates, and being a part of the grants made by the sovereign to the owners of the estates, it is a vested right, protected by the Constitution.

*Miller v. Letzerich,* 49 S.W.2d at 408 (citations omitted).

■ The record does not show whether Bily can trace his title to a grant from Spain or Mexico. Even if he can not, he enjoys the same *property rights* under the statute (now section 11.086). *Kraft v. Langford,* 565 S.W.2d at 229.

■ Although the parties have not mentioned the point, we note that the statutory action based upon section 11.086 can only be brought against the owner of the coterminous estate, in this case, Omni Equities, Inc. However, the statutory remedy is not exclusive. Bily has also stated a common law cause of action against Don Smith and W.K. Smith as third parties who caused the impoundment. *Kraft v. Langford,* 565 S.W.2d at 229; *City of Houston v. Renault, Inc.,* 431 S.W.2d 322, 325 (Tex.1968); *Muzquiz v. R.M. Mayfield & Co.,* 590 S.W.2d 742 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). We analyze the defendants' various arguments first as they relate to the statutory cause of action against Omni Equities, Inc., and then as they relate to the common law action against the Smiths.

■ The linchpin of Omni's defense to Bily's claims is that the city ordinances requiring grading from back to front override any water code provision because article 1016 of the Revised Statutes provides, in part, that "Any city or town ... shall have the exclusive control and power ... to open, alter, widen, extend, establish, regulate, grade, clean and otherwise improve said streets; to put drains or sewers therein ...; and to regulate and alter the grade

of premises; to require the filling up and raising of same...." Tex.Rev.Civ.Stat. Ann. art. 1016 (Vernon Supp.1987). Omni argues that to uphold Bily's judgment against it would be to impair the right of a city to pass grading ordinances that require drainage other than the "natural flow" of surface waters. We do not agree. The record shows that appellant could have complied with both the water code and city ordinances either by designing its street differently, by installing a drain at the rear of Bily's property that connected into its own storm sewer system, or by cutting swales. This is not a case where city ordinances necessarily conflict with state law. Omni cannot choose to ignore the water code provisions with impunity.

■ Omni also argues that Bily's alleged negligence per se amounts to a defense to any statutory cause of action. As discussed below, we are not convinced that Bily's actions amounted to negligence per se. But even if they did, Omni provides no explanation as to why Bily's negligence would bar him from his statutory cause of action. In *Blocher v. McArthur*, 303 S.W.2d 529 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.), the defendant landowner raised the level of his lot, causing rain water to concentrate on the five feet of property between his neighbor's basement apartment and his property line and to overflow through a window into the apartment. On the complaint of the plaintiff and at his suggestion, a retaining wall high enough to prevent the overflow was constructed, which caused the water held behind the wall to seep through the ground into the apartment. The jury found the plaintiff was negligent in failing to provide adequate drainage, and in failing to construct the apartment in a good and workmanlike manner so as to prevent subsurface water from seeping into the apartment. Nevertheless, the appeals court allowed the plaintiff to recover upon findings that the defendant diverted the natural flow of surface waters from his property to that of the plaintiff and created a nuisance

by building the retaining wall. "If water seeped into the apartment as a result of its unlawful diversion or as a result of the retaining wall, then the manner of the construction of the apartment (constructed prior to the wall) would not be a defense." *Id.* at 534. *But see contra, Bock Construction Co. v. Dallas Power & Light Co.*, 415 S.W.2d 227 (Tex.Civ.App.—Dallas 1967, no writ).

■ Bily's action against Omni based upon Omni's violation of section 11.086 of the water code is not dependent upon any finding that Omni was negligent. *See Turner v. Big Lake Oil Co.*, 128 Tex. 155, 96 S.W.2d 221, 227 (1936). "The elements of the statutory cause of action are (1) a diversion or impoundment of surface water which (2) causes (3) damage to the property of the plaintiff landowner." *Kraft v. Langford*, 565 S.W.2d at 229. The jury specifically found each of these elements. Bily is entitled to an award for actual damages against Omni Equities, Inc.

Our supreme court has also recognized that impounding the natural flow of surface waters can give rise to a common law cause of action against third parties (as opposed to owners of contiguous estates) causing the impoundment.[1] *Kraft v. Langford*, 565 S.W.2d 229. The court has adopted the reasoning of the American Law Institute as stated in the Restatement of Torts (Second) in describing this common law action. *City of Houston v. Renault, Inc.*, 431 S.W.2d 322, 325 (Tex.1968); *see also Carter v. Lee*, 502 S.W.2d 925 (Tex. Civ.App.—Beaumont 1973, writ ref'd n.r. e.).

■ Under the Restatement, an invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water may constitute a private nuisance. Restatement (Second) of Torts § 833 (1979). A private nuisance is a non-trespassory invasion of another's interest in the private use or enjoyment of land. *Id.* at § 821D. The inva-

---

**1.** It is undisputed that the placement of the fill by Omni's contractors was a cause of the impoundment of water on Bily's land. The jury so found in Special Issue I. We will treat the causation element in Bily's nuisance action as established.

sion can be intentional or unintentional. When the invasion is intentional, liability depends upon whether the invasion was unreasonable. *Id.* at § 822 and § 833 comment b. If the invasion is unintentional, liability depends upon whether the defendant's conduct was negligent, reckless, or abnormally dangerous. *Id.*

■ The judgment against the Smiths can be upheld on either theory of liability. The jury found that the defendants' conduct in impounding the flow of surface waters from the property owned by John Bily was intentional (Special Issue VII) and unreasonable (Special Issue VIII). It also found that the defendants were negligent in their failure to make any provision for the drainage of the Bily property (Special Issue II), and that this failure was a proximate cause of damage to Bily (Special Issue III).

Omni and the Smiths attack the sufficiency of the evidence (through no evidence and against the great weight and preponderance of the evidence points) to support these findings by arguing that their actions were neither intentional, unreasonable, nor negligent because the only motivation behind their actions was to develop their land according to the dictates of the ordinances, especially the city ordinance regarding the 1 percent grade from back to front. Forgetting for the moment that the jury had the option of disbelieving the self-serving testimony of the Smiths, and assuming that the Smiths did not originally intend to block Bily's drainage, the findings of the jury are supported by undisputed evidence that *after* the Smiths were made aware of the problem they did nothing to discontinue the impoundment.

A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and ... (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

Restatement (Second) of Torts § 839 (1979).

We now address Omni and the Smiths' contention that Bily's actions amounted to contributory negligence that absolves Omni and the Smiths from liability under the common law. The jury found that Bily was not negligent in failing to grade his property at 1 percent from the rear to the curb line and not negligent in failing to get a variance from the City of Jersey Village to permit a different drainage than 1 percent from rear to front.

■ These findings are certainly not against the great weight and preponderance of the evidence, given the testimony by expert witnesses that to grade the extra-large lot at 1 percent from rear to the curb would require fill in the rear to be three feet deep, probably result in killing up to 56 trees in the yard, and ruin the house and swimming pool. Bily was also not negligent in failing to get a variance. He had lived in his house since 1978 without complaint from the city. City inspectors had approved the construction of his house. The city had even informed him that he was not to place fill on his lot or conduct any construction without prior approval because his lot was part of a floodway for water escaping from one of the tributaries to White Oak Bayou. (This condition was noticed after a 1980 flood damaged the Bily home. Witnesses testified that had the lot been graded from back to front, damage would have been more severe.)

Neither do we believe that Bily's actions amounted to negligence per se because the evidence discussed above raised an excuse for the supposed violation. Compliance would have involved a greater risk of harm to Bily and others. *See Missouri Pacific Railroad Co. v. American Statesman,* 552 S.W.2d 99, 102 (Tex.1977). Also, at the time Bily built his house, the Omni property was platted as reserve acreage. Bily testified that he thought he qualified under an exception to the grade requirement because his land drained into White Oak Bayou and he considered the reserve acreage "an extension to the bank of the bayou." Certainly, there is no evidence that the city considered Bily's actions in violation of the ordinance.

■ Even if Bily's actions can be considered negligence per se, Omni and the Smiths have failed to get an unconditional jury issue inquiring whether that negligence was a proximate cause of the damage. Without a finding on proximate cause and the amount of negligence attributable to each party, Omni has failed to get an essential affirmative finding to support its defensive theory. *Eagle Trucking Co. v. Texas Bitulithic Co.,* 612 S.W.2d 503, 507 (Tex.1981); *Alpine Telephone Corp. v. McCall,* 143 Tex. 335, 184 S.W.2d 830, 833 (1944).

We now address the issues regarding punitive damages. In a single point of error Bily asserts that he is entitled to punitive damages awarded by the jury. The trial court disregarded jury findings on jury issues VII, VIII, X, and XI and sustained Omni's and the Smiths' motion for judgment notwithstanding the verdict because it found no evidence of probative force to sustain the findings. In issues VII and VIII the jury found that the defendants' conduct in impounding the flow of surface waters from the land owned by John Bily was intentional and unreasonable. (The court instructed that " 'unreasonable' means obstructing the flow of surface water arbitrarily, negligently, wantonly, or without due regard for the adjoining property.") Special Issue X read:

> Do you find from a preponderance of the evidence that the conduct of Defendants Omni Equities, Inc., Don Smith and W.T. Smith, Jr. in failing to make any provision for the drainage of John Bily's property acted with heedless and reckless disregard of the rights of others affected by it?

> "Heedless and reckless" disregard means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

Special Issue XI inquired as to the amount of punitive damages deserved.

■ Omni and the Smiths do not assign error to the way the issues were worded. They do insist that there is no evidence (and in the alternative insufficient evidence) that they acted intentionally, unreasonably, or with heedless and reckless disregard of the rights of others because at all times they were simply complying with the city grading ordinance and acting upon the advice of their attorney that it was Bily who was in the wrong and responsible for solving the drainage problem. That actions were taken under the advice of an attorney is only one of the circumstances to be considered in whether punitive damages are deserved; it is not a defense to punitive damages. *Nueces Trust Co. v. White,* 564 S.W.2d 798, 806 (Tex.Civ.App.—Corpus Christi 1978, no writ).

A trial court may disregard a special issue if there is no evidence to support the jury's answer. Tex.R.Civ.P. 301. In determining whether there is any evidence to support a jury finding we must consider all evidence and inferences which tend to support the jury's verdict and reject all contrary evidence and inferences. *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 574 (Tex.1985).

We note that section 11.086 makes it a violation not only to cause an impoundment, but also to "permit ... impounding by him to continue." Tex.Water Code Ann. § 11.086 (Vernon Supp.1987). As discussed above, the common law also allows us to look at the actions or inaction of defendants after the impoundment is discovered. Even if the defendants did not originally intend that their actions result in an impounding of water on Bily's land, there is really no dispute that they intentionally permitted the impounding to continue.

■ One court of appeals has stated that if there is evidence of an intentional violation of section 11.086 of the water code, then the defendant may be required to respond in exemplary damages. *Planet Plows, Inc. v. Evans,* 600 S.W.2d 874, 877 (Tex.Civ.App.—Amarillo 1980, no writ), *citing Tennessee Gas Transmission Co. v. Moorhead,* 405 S.W.2d 81, 86 (Tex.Civ. App.—Beaumont 1966, writ ref'd n.r.e.).

However, that an act is unlawful is not of itself grounds for an award of exemplary or punitive damages. *Ware v. Paxton*, 359 S.W.2d 897, 899 (Tex.1962); *First City Bank-Farmers Branch v. Guex*, 659 S.W.2d 734, 741 (Tex.Civ.App.—Dallas 1983), *aff'd*, 677 S.W.2d 25 (Tex.1984).

 Punitive or exemplary damages are intended as punishment and to set an example to others. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555 (Tex.1985). They can be awarded when the defendant was consciously, i.e. knowingly, indifferent to the plaintiff's rights. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). It is undisputed that Bily informed Omni and the Smiths that their construction had blocked drainage from his land. Bily's attorney provided them a copy of section 11.086 of the water code. W.T. Smith admitted that he made no effort to correct the problem other than to file criminal complaints against Bily after the temporary injunction had been granted. Before the temporary ditch was dug, the standing water did not evaporate and algae was growing in it. This is some evidence, and factually sufficient evidence, to support a finding that Omni and the Smiths acted with conscious indifference to the rights of Bily.

The best precedent for our position is the case of *Neely v. Community Properties, Inc.*, 639 S.W.2d 452 (Tex.1982). In Neely, the defendants had taken some measures to remedy the flooding on their lower neighbors' property caused by the defendants' construction of an apartment complex. Nevertheless, the supreme court found some evidence to support the jury finding of conscious indifference to the plaintiffs' rights in the fact that the defendants knew that their efforts were not enough to completely solve the problem. *Id.* at 454. In our case the defendants did nothing.

Bily's point of error is sustained. Cross-points 1 through 47 brought by Omni and the Smiths are overruled.

 In their last three cross-points Omni and the Smiths contend that the trial court erred in admitting, over objection, testimony by their attorney and pictures of their attorney's lot in the City of Jersey Village. The testimony and pictures revealed that the attorney's house, which was built by the Smiths, sits on a lot that drains front to back. We find that this testimony was highly relevant to rebut the testimony given earlier in the trial by Don Smith that he had developed hundreds of lots in the City of Jersey Village and that he always followed the city ordinances on drainage and grading. If the testimony wrongly influenced the jury in finding that reasonable and necessary attorney fees incurred by Omni and the Smiths were zero, the error is harmless because they were not entitled to attorney fees when they did not win a judgment in their favor.

We affirm in part and reverse and render in part to modify the judgment so that Bily recovers punitive damages as awarded by the jury.