TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00419-CV







Tom Kilpatrick and Janice Kilpatrick, Appellants




v.




Curtis Tomlin and Patsy Tomlin, Appellees







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 176,055-B, HONORABLE BOBBY L. CUMMINGS, JUDGE PRESIDING







 Curtis and Patsy Tomlin ("the Tomlins") sued Tom and Janice Kilpatrick ("the
Kilpatricks"), seeking monetary damages and equitable relief for unlawful diversion of surface
water in violation of the Texas Water Code. See Tex. Water Code Ann. § 11.086 (West 2000). 
The Tomlins also requested attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(West 1997). The Kilpatricks now appeal the district court's issuance of a permanent injunction
requiring them to construct a drainage ditch and a detention pond on their property. They also
appeal the district court's award of actual damages, exemplary damages, and attorney's fees to
the Tomlins. We affirm the district court's judgment with respect to the injunction and the award
of expenses. We further reverse the district court's judgment awarding damages and attorney's
fees.


FACTUAL AND PROCEDURAL BACKGROUND

 This appeal arises out of a dispute between neighbors. The Tomlins reside next
to, and downhill from, property owned by the Kilpatricks. The record shows that for twenty-five
years, the Tomlins enjoyed the use of their property with little or no accumulation of water when
it rained. The water flowed in sheet form across their property, eventually soaking into the
ground and watering their grass and garden. Then, in 1999, the Kilpatricks excavated and graded
a portion of their property along the parties' common property line. This excavation exposed a
shell-limestone material underneath the topsoil. The Kilpatricks also constructed a berm along
the dividing property line.

 At a bench trial, the Tomlins' engineering expert testified that the exposed shell-limestone material was more impermeable than topsoil and contributed to increased runoff from
the Kilpatricks' property. He additionally testified that the berm impeded the sheet flow of water
downhill to the Tomlins' property and concentrated the runoff flow. The Tomlins introduced
several photographs showing muddy, silty water streaming on and across their property after a
rain. Mr. Tomlin testified that although he had requested several times that Mr. Kilpatrick 
rectify the runoff problem, Mr. Kilpatrick had done nothing.

 The trial court found that the Kilpatricks' excavation "resulted in the impounding
and diversion of surface waters in a manner that damaged the property of Plaintiffs by the
overflow of such water." The court enjoined the Kilpatricks from impounding surface water on
their property and diverting it onto the Tomlins' lot. The court also ordered the Kilpatricks to
construct a drainage ditch and detention pool to capture surface water on their property. In
addition to issuing injunctive relief, the court ordered the Kilpatricks to pay the Tomlins actual
damages, exemplary damages, expenses, and attorney's fees. Neither party timely requested
findings of fact and conclusions of law. The district court denied the Kilpatricks' motion for a
new trial.

 The Kilpatricks now appeal to this Court on the following grounds: the trial court
misinterpreted the applicable law when awarding injunctive relief to the Tomlins, the injunction
is void because it is both impermissibly vague and overly broad, the evidence presented was
inadequate to support an award of actual damages, the award of exemplary damages was
improper, and the award of attorney's fees was improperly based upon judicial notice.


DISCUSSION

Applicable Water Law

 The Kilpatricks contend that the district court misinterpreted the relevant law
regarding diversion of surface water flow. They claim that the court misstated the law by
concluding that the Tomlins are "entitled to receive surface water on their property . . . in the
volume and manner which existed prior to Defendants' excavation." The Kilpatricks argue that,
instead, the court should have stated that the Tomlins have a duty to receive the flow of water
from the adjacent and upper landowner.

 A district court's conclusions of law are reviewable and may not be reversed unless
they are erroneous as a matter of law. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835
S.W.2d 190, 196 (Tex. App.--Austin 1995, no writ). We will reverse a conclusion of law if it is
erroneous and not otherwise sustained by any legal theory supported by the evidence. Id.; see
also Arch Petroleum, Inc. v. Sharp, 958 S.W.2d 475, 477 (Tex. App.--Austin 1997, no pet.). The
Tomlins brought their suit under section 11.086 of the Texas Water Code, (1) which is derived from
the Spanish and Mexican civil law rule of "natural easements." Kraft v. Langford, 565 S.W.2d
223, 228-29 (Tex. 1978); Bily v. Omni Equities, Inc., 731 S.W.2d 606, 610 (Tex. App.--Houston
[14th Dist.] 1987, writ ref'd n.r.e.). "Under that rule a higher landowner could not burden
adjacent lands with surface water he accumulated or discharged except in the same manner in
which it would naturally flow; and the lower estate was obliged to receive the surface waters as
they naturally flowed." Bily, 731 S.W.2d at 610 (emphasis added). Whether one says that the
Tomlins have a "duty" or an "entitlement" to receive the surface waters as they naturally flowed
is irrelevant. The trial court did not err as a matter of law by rephrasing the rule of natural
easements.

 The Kilpatricks also argue that an excavation "slightly" diverting rain water does
not constitute diversion of the natural flow of water as prohibited by statute. They urge us to
require the Tomlins to prove that the diversion in this case was more than slight. However, the
only case the Kilpatricks cite for this proposition involved an attempt to enjoin future excavation
in a location that had not been shown to be a natural watercourse. See Shamburger v. Scheurrer,
198 S.W. 1069, 1070 (Tex. Civ. App.--Ft. Worth 1917, no writ). In contrast, the instant case
involves a past excavation and a proven diversion of water. Shamburger does not apply to these
facts. The Kilpatricks' first point of error is overruled.


The Injunction

 In their second and third points of error, the Kilpatricks argue that the injunction
is void as a matter of law because it is uncertain, it prohibits otherwise legal activity, and it fails
to describe in reasonable detail the requirements placed on them. In reviewing a trial court's
issuance of an injunction, we must determine whether the trial court clearly abused its discretion
in granting the injunction. City of Austin v. Travis County Landfill Co., L.L.C., 25 S.W.3d 191,
204 (Tex. App.--Austin 1999, no pet.). The Kilpatricks challenge the following provisions of the
trial court's judgment:


1. Plaintiffs are entitled to receive surface water on their property . . . in the
volume and manner which existed prior to Defendants' excavation . . . .


2. Defendants be permanently enjoined from impounding surface water upon
[their property] and then diverting it onto Plaintiffs' property . . . at any point
or points of discharge along the common boundary of said properties except
as specifically provided hereinafter in this judgment.


3. Defendants are hereby ordered to construct, at their sole cost, a drainage ditch
at or near the common boundary line of [Plaintiffs' and Defendants' property]
which is capable of adequately capturing surface water from [the Kilpatricks'
lot] and emptying same onto a detention pond located on . . . said lot . . . .


4. [A] professional engineer duly licensed in the State of Texas, is hereby
appointed as an agent of this Court for the purpose of designing, overseeing
and finally approving the construction of the drainage ditch and detention pond
described hereinabove.



 The Kilpatricks argue first that the injunction is illegal because it enjoins them from
discharging surface water onto the Tomlins' property, which they are entitled to do as a matter
of law. The Kilpatricks misinterpret the applicable water law. See Kraft, 565 S.W.2d at 228-29;
Bily, 731 S.W.2d at 610. By its terms, the injunction does not prevent the Kilpatricks from
discharging any surface water onto the Tomlins' property. The natural flow of water may still
run downhill. The Kilpatricks are only prevented "from impounding surface water . . . and then
diverting it . . . along the common boundary." This enjoined activity is clearly one to which they
are not entitled as a matter of law. See Tex. Water Code Ann. § 11.086(a). Thus, the injunction
does not prohibit otherwise legal activity.

 Second, the Kilpatricks claim that the injunction is impermissibly vague and cannot
be enforced because it requires them to discharge only the "volume and amount" of water that
existed prior to the excavation. They argue that they are faced with uncertainty because there is
no evidence of what this amount must be. The Kilpatricks further claim that the injunction would
subject them to potential penalties if the detention pond does not prove adequate to handle water
collected in an extraordinarily heavy rain and discharges water onto the Tomlin property. We
disagree.

 An injunction is not vague if it is sufficiently specific to apprise the enjoined
individuals of the actions required of them. Ex parte Hudson, 917 S.W.2d 24, 26 (Tex. 1996). 
Paragraph one of the judgment does not place any requirements on the Kilpatricks; it is a
conclusion of law consistent with the rule of natural easements. Nor does the remainder of the
judgment place any requirements on the Kilpatricks as to how much water may or may not be
released from the drainage ditch and detention pond ordered by the court. The injunction requires
the Kilpatricks to construct a detention pond "capable of adequately capturing surface water"; it
does not require the pond to retain all this captured water indefinitely. In fact, during the hearing
on motion for a new trial, the Tomlins emphasized their expectation that the detention pond would
continuously release water at a slow rate until it was empty. Given the fact that the district court
has appointed a professional engineer to supervise construction of the detention pond, we conclude
that the injunction adequately informs the Kilpatricks of the actions they are required to perform.

 Third, the Kilpatricks allege that the injunction is void because it fails to describe
in reasonable detail the requirements placed on them. They object that the details and
specifications of the drainage ditch and detention pond are not included in the judgment. (2) Instead,
the trial court directed that an engineer determine the specifications. Because the Kilpatricks
present the argument for the first time on appeal, we conclude that they have not preserved this
issue and will not address its merits. See Tex. R. App. P. 33.1(a)(1).

 The record supports the district court's judgment. Therefore, we hold that the
court did not abuse its discretion in issuing the injunction. The Kilpatricks' second and third
points of error are overruled.


Actual Damages

 The Kilpatricks challenge the district court's award of actual damages, arguing that
the court improperly measured damages based on an alleged decrease in the rental value of the
Tomlins' property during the eleven-month period between the excavation and the trial.

 Actual damages are allowed under section 11.086(a) of the Texas Water Code if
the three elements of the statutory cause of action are found: "(1) a diversion or impoundment of
surface water which (2) causes (3) [injury] to the property of the plaintiff landowner." Bily, 731
S.W.2d at 611; see also Tex. Water Code Ann. § 11.086(a); Kraft, 565 S.W.2d at 229
(addressing an earlier version of the statute). Injuries to real property may be either temporary
or permanent. Kraft, 565 S.W.2d at 227. A temporary injury is one that is "sporadic and
contingent upon some irregular force such as rain." Id. (quoting Atlas Chem. Indus., Inc. v.
Anderson, 524 S.W.2d 681, 685 (Tex. 1975)). An injury that can be remedied by injunction is
always a temporary injury. Id. Damages for a temporary injury are measured as "the amount
necessary to place the owner of the property in the same position he occupied prior to the injury." 
Id. In contrast, damages for a permanent injury are measured as "the difference in the value of
the property before and after the injury." Id. The Texas Supreme Court has held that "temporary
and permanent damages are mutually exclusive and damages for both may not be recovered in the
same action." Id.

 The district court concluded that the Tomlins affirmatively established all three
elements of the statutory cause of action, and we cannot conclude that the court abused its
discretion. The Tomlins' injuries are temporary. The inundation of their yard with muddy, silty
water is sporadic, occurring only during rains. Furthermore, the Tomlins have applied for and
received injunctive relief. Thus, any monetary damages should be calculated using the formula
for temporary injury.

 A court's calculation of damages for temporary injuries to real property should be
tailored to the circumstances of the specific case. See Hall v. Robbins, 790 S.W.2d 417, 418
(Tex. App.--Houston [14th Dist.] 1990, no writ) (discussing various methods of calculating
damages for temporary injuries). Loss of rentals is one measure of damages for the temporary
loss of use of land. City of Austin v. Teague, 570 S.W.2d 389, 394 (Tex. 1978). "The purpose
of the measure of damage being based upon the value of the loss of use is to compensate the
owner for his loss due to the inability to use the property for its normal purposes." Etex Tel.
Coop., Inc. v. Sanders, 607 S.W.2d 278, 281 (Tex. Civ. App.--Texarkana 1980, no writ). 
Typically, loss of rentals is used as a measure of damages when there is temporary injury to
agricultural lands. See, e.g., Lone Star Gas Co. v. Hutton, 58 S.W.2d 19, 21 (Tex. Comm'n
App. 1933, holding approved); City of Tyler v. House, 64 S.W.2d 1007, 1008 (Tex. Civ.
App.--Tyler 1933, no writ). But a distinction should be made "between farm land, which is
valuable only for its periodical crops, and a house which is valuable for its daily use." King v.
McGuff, 234 S.W.2d 403, 406 (Tex. 1950) (discussing Hutton, 58 S.W.2d 19, and concluding
that the owners of a tortiously injured house were not entitled to damages for lost use based on
rental value).

 Loss of rental value is an appropriate form of damages when a property is normally
used for rental purposes. See Etex, 607 S.W.2d at 281; City of Longview v. Stewart, 66 S.W.2d
450, 451 (Tex. Civ. App.--Texarkana 1933, no writ). Where there is no current plan to rent the
land, however, a plaintiff must prove with reasonable certainty that his property would have
produced a return from rentals during the time of injury. Teague, 570 S.W.2d at 395. Testimony
that a particular return is "anticipated" or "is common in the business" does not meet the burden
of showing that a particular tract would actually be leased. Id. If a plaintiff cannot meet that
burden, he is entitled only to recovery of expenses "necessarily incurred as a result of the
temporary interference with the . . . use of his land." Id.

 The property at issue here is residential, not agricultural. Although evidence was
presented that the Tomlins had leased their property in the past, the family was living there during
the period of temporary injury. The record contains no evidence that the Tomlins attempted to
lease this property during that period, or had any intention of leasing it in the future. In fact, Mr.
Tomlin indicated that he intends to live there for the remainder of his retirement years. 
Furthermore, there is no evidence that the Tomlins were unable to use their house and property
for its normal residential purpose during the period of injury. Their enjoyment of the property
may have been diminished, but the record does not indicate loss of use.

 We conclude that loss or diminution of rental value is not the proper measure of
damages in this case. See Teague, 570 S.W.2d at 395. Instead, the Tomlins are entitled only to
a recovery of expenses incurred as a result of the temporary interference with the use of their
land. See id. An award of expenses will place the Tomlins in the same position as before the
injury. See Kraft, 565 S.W.2d at 227.

 The Tomlins did not provide evidence that their property was injured so as to
require any repairs beyond the sweeping of silt from their walkways. There is no evidence of
permanent water damage to the house or grounds. The record does not show that the Tomlins
incurred any damages in connection with the temporary injury other than the expenses attendant
in the hiring of an expert witness. This expense was addressed by the district court's award of
$3035 for expenses incurred in preparation of trial. We uphold the award of expenses and reverse
the district court's additional award of $3300 plus interest for the alleged diminution of rental
value.


Exemplary Damages

 A trier of fact has discretion to determine both whether exemplary damages should
be awarded and the amount of that award. Tex. Civ. Prac. & Rem. Code Ann. § 41.010(b) (West
1997). Except in a wrongful death action, exemplary damages may be awarded if the claimant
proves by clear and convincing evidence that the harm for which damages are sought resulted
from fraud or malice. Id. § 41.003(a). An intent to do harm is not necessary to show malice. 
Id. § 41.001(7). Instead, malice may be shown by 


(B) an act or omission:


 ( i) which when viewed objectively from the standpoint of the actor at the
time of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and


 (ii) of which the actor has actual, subjective awareness of the risk involved,
but nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others.


Id.

 The trial court found that the Kilpatricks acted with conscious indifference to the
Tomlins' rights. During the hearing on the Kilpatricks' motion for a new trial, the court stated
that Mr. Kilpatrick had acted unconscionably by taking off a large amount of topsoil, "which then
probably anyone would realize that would cause a different type of drainage." Furthermore, Mr.
Kilpatrick "gave . . . the impression that he was just going to do this and put the water on
wherever it went, to whoever, and not make any provisions for it and nothing would be done
apparently." While this finding comports with the definition of malice given above, and a fact
finder could reasonably determine, based on the record, that the Kilpatricks acted with malice, 
actual damages must be proven before punitive damages are available. Where there is no recovery
of actual tort damages, there can be no recovery of punitive damages. Twin City Fire Ins. Co.
v. Davis, 904 S.W.2d 633, 665 (Tex. 1995). We must therefore conclude that the trial court
abused its discretion by awarding exemplary damages in the amount of $1000.


Attorney's Fees

 An award of attorney's fees must be based upon statutory authority, and "statutes
providing for such recovery must be strictly construed." Travis County Landfill Co., L.L.C., 25
S.W.3d at 206-07 (citing New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W.2d 914, 915
(Tex. 1967) and Van Zandt v. Fort Worth Press, 359 S.W.2d 893, 895 (Tex. 1962)). The award
of attorney's fees in this case is based on the Declaratory Judgment Act ("the Act"), which
provides that a "court may award costs and reasonable and necessary attorney's fees as are
equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The decision
of whether to award attorney's fees under the Act is within a trial court's sound discretion. 
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). The amount of the fee awarded is also
discretionary, but is limited by the Act's requirement that the award be "reasonable and
necessary." Id. Reasonableness and necessity are matters of fact. Id. Therefore, it is an abuse
of discretion for a district court to award fees without factually sufficient evidence to support the
finding that the fees were reasonable and necessary, "even if the court believed them to be just." 
Id.

 Unlike chapter 38 of the Texas Civil Practice & Remedies Code, chapter 37 makes
no provision for judicial notice of reasonable attorney's fees. Compare Tex. Civ. Prac. & Rem.
Code Ann. § 38.004 (West 1997), with id. ch. 37 (West 1997 & Supp. 2001). See also Gorman
v. Gorman, 966 S.W.2d 858, 866-67 (Tex. App.--Houston [1st Dist.] 1998, pet. denied);
GeoChem Tech Corp. v. Verseckes, 929 S.W.2d 85, 93 (Tex. App.--Eastland 1996), rev'd on other
grounds, 962 S.W.2d 541 (Tex. 1998). When the Act is strictly construed, chapter 37 provides
a party claiming attorney's fees "neither the presumption of reasonableness nor the availability
of judicial notice." GeoChem, 929 S.W.2d at 92-93.

 Mr. Tomlin testified that he hired an attorney and "incurred reasonable and
necessary attorneys fees in the pursuit of [his] claim." However, he did not testify to the amount
of these fees or to the hours of work for which he was billed. Because the Tomlins failed to
designate their attorney as an expert witness in response to defendants' discovery requests, the
court did not permit the attorney to testify to the amount of fees that had accrued in this case. See
Gorman, 966 S.W.2d at 866. Although the court did not allow the Tomlins' attorney to take the
stand, it did permit him to state the number of hours he had worked on the case. At closing
argument, the Tomlins' attorney requested the court to take judicial notice that minimum
attorney's fees in the county were $100 per hour.

 An attorney's unsworn statements are not evidence. In re Doe 3, 19 S.W.3d 300,
305 (Tex. 2000); Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997). Thus, there is no evidence
in the record supporting the amount of reasonable and necessary attorney fees in this case. We
hold that the district court did not abuse its discretion in deciding that the Tomlins are entitled to
an award of attorney's fees; the court did, however, abuse its discretion by taking judicial notice
of attorney's fees awarded under the Act. Therefore, we reverse the award of attorney's fees and
remand that part of the trial court's judgment for further proceedings to determine a reasonable
and necessary amount. See GeoChem, 929 S.W.2d at 93.


CONCLUSION

 We reverse the award of damages for lost or diminished rentals and exemplary
damages and render judgment that the Tomlins take nothing thereon except for expenses in the
amount of $3035, and we reverse the award of attorney's fees and remand that portion of the
judgment for further proceedings. We affirm the judgment in all other respects.



 
 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: March 15, 2001

Do Not Publish
1. This statute states in relevant part: "No person may divert or impound the natural flow of
surface waters in this state, or permit a diversion or impounding by him to continue, in a manner
that damages the property of another by the overflow of the water diverted or impounded." Tex.
Water Code Ann. § 11.086(a) (West 2000). A person injured under section 11.086 may seek
remedies at law and in equity and "may recover damages occasioned by the overflow." Id.
§ 11.086(b).
2. When examining the Tomlins' expert witness and their own expert, the Kilpatricks suggested
that a drainage ditch and detention pond would be the only appropriate remedy in this case.



> When the Act is strictly construed, chapter 37 provides
a party claiming attorney's fees "n