Affirmed and Majority and Dissenting Opinions filed July 24, 2003









Affirmed and Majority and Dissenting Opinions filed
July 24, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01168-CV

____________

 

KEVIN DIETRICH, DENISE DIETRICH, and SETH DIETRICH, a minor
child, Appellants

 

V.

 

HAROLD C. GOODMAN, JR. and WINFORD J. GOODMAN,
Appellees

 



 

On
Appeal from the 165th District Court

Harris County, Texas

Trial
Court Cause No. 99-41790

 



 

D
I S S E N T I N G  
O P I N I O N 

 








Because the flood waters in this case ran through a
gully and a few inches of a man-made trench before entering the Goodmans= property, the Court holds they
could divert them with impunity. 
Conceding this absurd result is at odds with the express words of the
Texas Water Code, the Court holds we are confined by opinions of our sister
courts declaring water diverted into a watercourse or touched by mankind no
longer Asurface water.@  I disagree that our sister courts have ever
applied such rules to facts like these. 
Moreover, the Supreme Court of Texas and this Court have adopted a
different rule that governs here. 
Because the Court turns aside from that rule, I respectfully dissent.

Generally, Texas law prohibits a landowner from
burdening adjacent lands with water except in the same manner in which it would
naturally flow.[1]  Thus, a lower estate is obliged to receive
water in a natural watercourse (such as a stream or creek), even if those
waters have been augmented by runoff from an upper estate.[2]  Similarly, a lower estate is obliged to
receive surface waters as they naturally flow from an upper estate,[3]
but not obliged to do so if they have been channeled by the hand of man.[4]


Nevertheless, the Texas Supreme Court and this Court
long ago adopted a modified rule in urban settings, where extensive development makes
it difficult or even impossible to establish how water Anaturally@ flowed.[5]
 As this Court recognized, Asurface
water@ in such areas is not confined to
natural (that is, prehistoric) contours:








In an urban environment such as Harris County, the
natural flow may have been changed numerous times before there is any
litigation on the subject.  Thus, to
force plaintiffs in such actions to prove the natural flow of surface water Auntouched by the hand of man@ in an urban setting, would frequently deprive such
litigants of an adequate remedy.  The
Restatement of Torts Section 833, comment a (1939) defines interference with
the flow of surface water Aas an obstruction, diversion or alteration of what has
theretofore been regarded as the natural or normal flow of surface waters in
the particular place where the interference occurs.@  Thus, it is the normal
or natural flow of surface water at the time of diversion that should
determine the rights of the parties in an urban area.[6]  

 

While
both courts were addressing common-law negligence actions, the absence of a
statutory definition of surface water indicates the common law definition
should apply.[7]
Moreover, the Supreme Court has held the statute was intended to eliminate
differences between the civil and common law so that Athe
civil law rule as to surface water would henceforth govern all property.@[8] 


There is no question in this case what that normal flow
wasCthe developer of this subdivision
constructed a storm sewer drain (no doubt at considerable expense) to receive
runoff from the recreation area and channel it through the drain at the rear of
the Goodman=s property. Whoever covered up the
drain clearly diverted the normal flow of surface water in a manner that
damaged the Dietrichs=
property.[9]








I do not think the opinions of our sister courts require
us to ignore the clear words of this statute and adopt an interpretation the
Court admits is absurd.  While the cases mentioned unfavorably
by the Court cite the human-hands and natural-watercourse exceptions to the
category of surface waters, they address very different situations than those
involved here.  Two hold that water in a
river or stream is not covered by the statute,[10]
but neither suggests a gully rises to that level.  Even in Texas where creeks can run dry, no
one confuses a creek with gully.  Two
other cases merely hold that upper landowners cannot channel water onto lower
ones, or that if they do the lower ones may return the favor by damming the
flow to send it back.[11]  And one of
these latter cases recognizes that surface water may remain surface water even after
it has been diverted by artificial means.[12]

Additionally, this case is different from others because
it addresses the actions a Amiddle@
landowner may take.  Assuming the Goodmans could have diverted the flow of water back to the
club area from whence it came, the question here is whether they could instead
divert it upon their lower neighbors. 
Only a divided panel of the Third Court of Appeals appears to have
answered this question in the affirmative,[13]
in an opinion that has been criticized by commentators.[14]

Here, the jury found the Goodmans
were not negligent; but the statute imposes a duty of strict liability.[15]  There was at least some evidence the Goodmans caused the diversion here (even if in a
non-negligent manner) by covering the drain. 
Thus, the section 11.086 issue should have been submitted to the jury.








AThere has been much discussion and
even more confusion concerning the rights and duties of adjoining landowners
with respect to surface water.@[16] 
By excluding touched-by-human-hands and coming-out-of-a-gully water from
the statute, the Court adds to that confusion in this case.  Accordingly, I respectfully dissent.

 

 

/s/        Scott Brister

Chief Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed July 24, 2003.

Panel
consists of Chief Justice Brister, Justice Hudson,
and Senior Chief Justice Murphy.[17]

 











[1]  See Kraft v.
Langford, 565 S.W.2d 223, 228-29 (Tex. 1978).





[2]  See
City of Keller v. Wilson,
86 S.W.3d 693, 711 (Tex. App.CFort Worth 2002, pet. filed).





[3]  See Bily v. Omni Equities, Inc., 731 S.W.2d 606, 611-12 (Tex. App.CHouston [14th Dist.] 1987, writ ref=d n.r.e.) (holding lower
estate owner liable under 11.086 for raising grade of property so as to reduce
natural runoff).





[4]  See
Bunch v. Thomas, 49 S.W.2d
421, 423  (Tex. 1932) (holding lower
property owner was not liable under predecessor statute for building levee
blocking water coming from uphill that had been channeled through dip across
road); Jefferson County Drainage Dist. No. 6 v. Lower Neches
Valley Auth., 876 S.W.2d 940, 950 (Tex. App.CBeaumont 1994, writ denied) (holding lower estate owner
not liable under section 11.086 for building canals that blocked water coming
from upper land in channelized drainage ditches).





[5]  City of
Houston v. Renault, Inc., 431 S.W.2d
322, 325 (Tex. 1968); Muzquiz
v. R.M. Mayfield & Co., 590 S.W.2d 742, 743B44 (Tex. App.CHouston [14th Dist.] 1979, writ ref=d n.r.e.).





[6]  Muzquiz,
590 S.W.2d at 743B44 (emphasis added).





[7] See Parr v. Tagco Indus.,
620 S.W.2d 200, 206 (Tex. App.CAmarillo
1981, no writ); see also Robertson County v. Wymola,
17 S.W.3d 334, 343 (Tex. App.CAustin
2000, pet. denied) (looking to the common law measure of actual damages in the
absence of a statutory definition).





[8] See Kraft,
565 S.W.2d at 229.





[9]See Tex. Water Code ' 11.086(a).





[10] See Dalon
v. City of DeSoto, 852 S.W.2d 530, 539 (Tex. App.CDallas 1992, writ denied) (holding city not liable under
11.086 for channeling storm sewers into natural creek that allegedly caused
erosion of lower owners property because water in creek was not surface water); Stoner v. City of Dallas, 392 S.W.2d 910, 912
(Tex. Civ. App.CDallas
1965, writ ref=d n.r.e.) (holding city not liable under 11.086 for widening creek
and thus causing flooding on lower owner=s property) .





[11]
See Boatman v. Lites, 970 S.W.2d 41, 45 (Tex. App.CTyler 1998, no pet.) (holding upper owner liable under
11.086 because some water diverted by berm was
natural runoff); Jefferson County Drainage Dist. No. 6, 876 S.W.2d at
950 (holding lower estate owner not liable under 11.086 for building canals
that blocked water draining from upper land in drainage ditches).





[12]   See Dalon, 852 S.W.2d at 539. 





[13]
See Mitchell v. Blomdahl, 730 S.W.2d 791, 795 (Tex. App.CAustin 1987, writ ref=d n.r.e.) (holding lower
landowner was not liable to middle landowner for blocking flow of water it was
receiving, as water came from storm sewers diverted by upper landowner onto
middle owners=
property).





[14] See Douglas G. Caroom and D=Ann Johnson, Annual Survey of Texas Law: Water Law,
42 Sw. L.J. 439, 446 (1988)
(finding Mitchell Atroublesome,@ Ainequitable,@ and that its use of untouched by hands of man criteria
as a judicially created exception to section 11.086 that might Aswallow the basic rule@ of the statute).





[15]See Bily, 731 S.W.2d at 611. 






[16]  City of
Houston v. Renault, Inc., 431 S.W.2d
322, 325 (Tex. 1968).





[17]  Senior
Chief Justice Paul Murphy sitting by assignment.