**WILLACY COUNTY v. OAKES.**

No. 12262.

Court of Civil Appeals of Texas.
San Antonio.

April 18, 1951.

Rehearing Denied May 16, 1951.

Jesse G. Foster, Raymondville, for appellant.

C. T. Mortensen, Harlingen, for appellee.

NORVELL, Justice.

This is an appeal from an order refusing to grant a mandatory injunction against G. E. Oakes commanding him to remove a dam erected alongside a county road. In the event of a substantial rainfall, water backs up against the dam and floods the county road. Willacy County sought the injunction upon the theory that the dam constituted a nuisance.

The facts are for the most part undisputed. Oakes is the owner of Lots Nos. 10 and 11 of Block 27 of the Gulf Coast Irrigation Company's Subdivision of lands located in Willacy County, Texas. U. S. Highway No. 77 runs north and south through the county and adjacent to Lot No. 10 of Oakes' land. A county road runs east and west at right angles to Highway No. 77 and adjacent to the north boundary line of Oakes' property. All of Lot No. 10, and particularly the northwest part thereof, is lower in elevation than the surrounding territory. The low elevation without the boundaries of Lot No. 10 is 32.5 feet, while to the north across the county road the elevation increases to an average of about 39 feet, about a half mile distant from the low point in Lot No. 10. Approximately the same situation exists with reference to the lands lying across Highway No. 77, and to the west of the low point in Lot No. 10. The natural flow of the water from the north and west, within a radius of at least one-half mile from the low point, is toward the 32.5 elevation contour on the Oakes land. However, at the time of trial and prior thereto surface waters were not draining from the area involved in their natural diffused condition untouched by the hand of man. The grades and embankments for both Highway No. 77 and the county highway served to concentrate and impound the surface waters. Culverts had been placed under the highway and the county road, so that water approaching and overflowing Oakes' land was gathered into a stream or concentrated flow by said culverts. In order to prevent damage to his lands Oakes erected the dam and dykes involved, which kept the water from the culvert under the county road particularly from flowing upon his property.

It is well settled that lower lying lands are subject to "a service to receive

the burden of surface waters which may flow from the higher estate onto the lower, so long as the surface water from the dominant estate reaches the borders of the servient one *untouched and undirected by the hands of man.*" Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 408, 85 A.L.R. 451. Had appellee attempted to interfere with the natural diffused flow of water onto his property, the dam would have undoubtedly constituted an illegal obstruction and a nuisance and subject to abatement by injunction proceedings. Shubert v. State, 16 Tex.App. 645; Richardson v. State, 46 Tex.Cr.Rep. 83, 79 S.W. 536; Joseph v. City of Austin, Tex.Civ.App., 101 S.W.2d 381, wr. ref.

In the present case, however, the appellant, Willacy County, directly contributed to the gathering together of the surface waters and expelling them onto appellee's lands in a concentrated form. This was done by maintaining the county road and placing a culvert under the same at the low point so as to drain the water from the area lying north of the road. The placing of the culvert under the road was undoubtedly necessary for proper highway maintenance, as well as to protect the lands north of the road from being inundated. It had the effect, however, of causing a concentrated force of water to flow onto appellee's land, which was calculated to cause more serious injury thereto than would the natural diffused flow of water over said tract. Willacy County had secured no easement for a drainway, and appellee was thus faced with an election between instituting a legal action or relying upon self-help. He chose the latter course and constructed the dam to keep the concentrated flow of water off his property. In so doing he was undoubtedly acting within his legal rights. In Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421, 424, it appeared that certain structures had been placed on the Bunch land which caused the water therefrom to flow onto the lower Thomas tract in concentrated form so as to form a gully or rivulet. The owners of the Thomas tract erected an embankment to protect their property. The Supreme Court held that: "Since the servient estate of Mrs. Thomas is charged only with receiving the flow of surface waters from the dominant heritage of Bunch while these waters reach the borders of the estate in their natural state, untouched by the hands of man, it necessarily follows that the statute involved affords no protection to Mr. Bunch, and that Mrs. Thomas has the right to maintain her embankment and levee for the purpose of keeping the surface waters from overflowing her land, so long as structures are maintained which cause these waters from the Bunch land to reach the borders of her estate in an unnatural form." The statute referred to in the above quotation is Article 7589a, Vernon's Civil Stats., which provides that it shall be unlawful for anyone to divert the natural flow of surface waters.

Appellant admits the force of the decision in Bunch v. Thomas, supra, and says that appellee might prevail in a case against a private person, but that here the rights of the county as the representative of the public are involved. It is said that appellee should be restricted to a suit for damages against the county and denied the relief of self-help.

In the interest of orderly processes, the State and its subdivisions occupy legal positions in certain cases differing from that of the ordinary litigant. However, these cases are exceptions to the general rule which places all litigants, be they sovereign states, municipal corporations or citizens, in the same category and upon an equality. We see no reason for departing from the general rule in this case. County roads are for the public good and the burden of constructing and maintaining them should be borne by the county taxpayers generally and not by the adjacent landowners. If an easement is required for a drainway over a portion of appellee's lands it should be acquired through purchase or the exercise of the processes incident to the right of eminent domain.

There is no error in the judgment appealed from and it is accordingly affirmed.