**Walter LEBER, Appellant,**

v.

**R. A. ADAMS et al., Appellees.**

No. 14140.

Court of Civil Appeals of Texas.

San Antonio.

July 24, 1963.

Rehearing Denied Sept. 4, 1963.

Bloch & Walton, Corpus Christi, for appellant.

Luther E. Jones, Jr., Corpus Christi, Burnett & Burnett, Sinton, for appellees.

BARROW, Justice.

Plaintiffs, R. A. Adams, A. A. Turner and Ivan C. Baucom, sued for and obtained a permanent injunction which ordered Walter Leber to remove a caliche block he had placed in a drainage ditch on his land, and forbade him from doing anything which would impede the natural flow of water through that ditch. Leber has appealed. Leber contends that he had the right to block the unnatural and concentrated flow of waters which pour onto his lands from his neighbors.

Plaintiffs and defendants are owners of flat farm land in San Patricio County, which is burdened with a drainage problem. The plaintiffs' lands are west of and separated from Leber's tract by a spur railroad track, a county road and a ditch to the east of the county road. This ditch, hereafter called the "road ditch", is on the west boundary of the Leber tract and drains both north and south. The plaintiffs' lands and the Leber tract are bounded on the north by the main line of a railroad and another county road which runs east and west and are intersected by the north-south county road and "road ditch". These railroad tracks, ditches and county roads prevent the flow of surface water from flowing

in a diffused state which would naturally be toward the east and northeast. The ditch in question, hereinafter called the "Leber Ditch" intersects the "road ditch" a short distance south of the intersection of the "road ditch" and the main line of the railroad.

For more than twenty-five years before this suit was filed the lands of plaintiffs had been drained, however poorly, through a series of artificially created ditches which go under the spur railroad track and the north-south county road by three culverts into the "road ditch". There was a block in the "road ditch" just south of where it intersected the "Leber Ditch". As a result of this block, "Leber Ditch" was burdened only with water that came through one culvert directly west of "Leber Ditch". Water from the other two culverts flowing into the "road ditch" were required to drain to the south. This was slow drainage and therefore water backed up onto plaintiffs' lands and caused damage. The water that flowed through "Leber Ditch" went east to a low place on Leber's land where it formed a temporary lake and damaged his land until it drained across the main railroad line and the east-west county road. The origin of "Leber Ditch" was not established by the evidence, although there is evidence that some of the surface water would naturally flow in the vicinity of this ditch.

Although this drainage solution was unsatisfactory, it was the status which has existed as long as any of the witnesses could remember before the present controversy. The thing which prompted the present suit was the creation of an opening in the block in the "road ditch" by the County Commissioner in December of 1961. This new opening undisputedly caused an increase in the surface water draining through the "Leber Ditch". Leber in February of 1962 plugged the "Leber Ditch" by dumping caliche into the ditch at a point wholly on Leber's land. This is the point in controversy. Does Leber have the legal right to plug the ditch where there is no dispute that the natural drainage onto his land has been increased and concentrated by the artificial and man-made system?

It is our opinion that Leber was legally justified in rejecting this water under the rule set forth by the Supreme Court in Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421, and by this Court in Willacy County v. Oakes, 239 S.W.2d 692, writ refused. In each of these cases the natural drainage of the surface water was towards the lower lying lands of the respective defendants. However, in each case the natural diffused flow had been diverted and made more burdensome by acts or industry of man. In Bunch v. Thomas, supra, ditches had been placed on the Bunch land which caused the water therefrom to flow into the lower Thomas tract in concentrated form so as to form a gully or rivulet. The Supreme Court upheld the right of Mrs. Thomas to erect an embankment to protect her property. The Supreme Court said: "It is the settled law of this state that while under the statute quoted (Art. 7589a, Vernon's Ann.Civ.Stats.) the lower estate must receive the surface waters naturally flowing thereon from a higher estate, yet it is not required to receive these waters except in their natural condition, untouched by the hands of man."

In Willacy County v. Oakes, supra, the natural drainage of surface waters was across Oakes' land. However, the County placed culverts under an embankment created by the intersection of two roads so that the water approaching and overflowing Oakes' land was gathered into a stream or concentrated flow by said culverts. Oakes resorted to self-help and erected a dam on his land to keep water from the culverts from flowing upon his property. This Court affirmed the order of the trial court refusing a mandatory injunction commanding Oakes to remove the dam, and Justice Norvell, speaking for the Court, said: "It is well settled that lower lying lands are subject to 'a service to receive the burden

of surface waters which may flow from the higher estate onto the lower, so long as the surface water from the dominant estate reaches the borders of the servient one *untouched and undirected by the hands of man.*' "

Under the undisputed record in this case, the surface waters did not reach the "Leber Ditch" in a diffused state but were diverted and concentrated by the man-made ditches, embankments and culverts in the area. In this situation appellant was entitled to resort to self-help to prevent damage to his land. The trial court erred in granting the mandatory injunction ordering appellant to remove the caliche block placed in the ditch on his land.

The judgment of the trial court is reversed, the injunction dissolved and the petition dismissed at appellees' cost.