Bill F. BOATMAN and Lou
Boatman, Appellants,

v.

Charles A. LITES and Joyce
B. Lites, Appellees.

No. 12–97–00032–CV.

Court of Appeals of Texas,
Tyler.

Feb. 27, 1998.

John Fletcher Walker, Tyler, for appellants.

Kerry L. Russell, Tyler, for appellees.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellants, Bill Boatman and Lou Boatman ("Boatmans") appeal a jury verdict and declaratory judgment for Charles Lites and Joyce Lites ("Lites") in a water law case. The Boatmans complain that the trial court erred when it awarded attorney's fees, when it overruled their motions for directed verdict, and when it overruled their objections to certain jury questions. We will affirm in part, and reverse and render in part.

The Lites and the Boatmans owned adjoining property in Chandler, Texas. In their original petition, the Lites maintained that the Boatmans negligently diverted the natural flow of water from their land onto the Lites' land by the use of "berms." As a consequence of this diversion, the Lites' land eroded where the water flowed into the creek which bordered both parties' property. They requested a declaratory judgment declaring their rights, status and legal remedies pertaining to their property deeds and their property, and their rights under Chapter 11 of the Texas Water Code, including, but not limited to § 11.086. They also sought temporary and permanent injunctions, actual and punitive damages, and attorney's fees. After a trial to the jury, the trial court declared that the Lites owned a certain piece of property in Henderson County, Texas, and that the Boatmans violated § 11.086 of the Texas Water Code by diverting surface water onto that property. The trial court further held that the Lites' property would continue to be damaged unless the Boatmans were enjoined from diverting the natural flow of the surface waters on the Lites' property; therefore, the Boatmans were permanently enjoined from doing so. The court awarded the Lites $2,352 in actual damages, $3,800 in punitive damages, and $12,500 in attorney's fees.

In their first point of error, the Boatmans complain that the trial court erred in rendering judgment awarding attorney's fees because the Texas Declaratory Judgments Act was inapplicable to the Lites' causes of action. We agree. The Declaratory Judgments Act provides that a person interested under a deed or other writing constituting a contract may have the court determine any question of construction or validity arising under the instrument and obtain a declaration of rights, status, or other legal relations under it.[1] In addition, a person whose rights, status, or other legal relations are affected by a statute may have the court determine any question of construction or validity arising under the statute and obtain a declaration thereunder.[2] The Act provides a procedural method for deciding the validity

---

1. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon Supp.1992).

2. *Id.*

or proper construction of a written instrument or a statute.[3] A declaratory judgment should not be rendered when there is no claim that a statute or a deed is ambiguous or invalid.[4] It is well settled in Texas that a declaratory judgment may not be used solely as a vehicle to obtain attorney's fees,[5] and it is inappropriate if it will serve no useful purpose.[6] The rendition of a declaratory judgment, however, rests within the sound discretion of the trial court.[7]

■ In the instant case, the Lites gave two bases upon which they claimed the right to a declaratory judgment. First, they asserted that there was a need for the court to determine the rights of the parties under the deeds to the property. In reviewing the record, however, the ownership of the property was never at issue. Consequently, we hold that the trial court abused its discretion when it afforded declaratory relief on this basis.

■ As their second reason for declaratory judgment, the Lites asserted that they required the court to determine the parties' rights under § 11.086 of the Texas Water Code. In our view, this was a request for the court to declare liability under a civil statute. The Lites' declaratory judgment action requested no greater or different relief than did their claim for damages resulting from negligence and the violation of § 11.086.[8] We hold, therefore, that it was an abuse of discretion when the trial court granted declaratory relief on this basis.

■ The Lites argue that the Boatmans waived error on this point by not filing and having the trial court rule on a special exception to the pleading requesting declaratory

judgment relief.[9] We disagree. A party waives error on this issue only if he fails "to properly except ... or otherwise raise the issue until *after* the judgment was signed." [10] At the trial of this case, the Boatmans informed the court that they objected to the award of attorney's fees by filing a motion in limine, by objecting to evidence of attorney's fees and submitting a trial brief setting out their position that declaratory judgment was not applicable to this case, and by objecting to the submission of the jury question on attorney's fees. We hold that the Boatmans fairly apprised the trial court of their position that declaratory judgment and the award of attorney's fees was inappropriate in this action. We sustain point of error one.

The Lites file a cross-point complaining that the trial court erred in overruling their motion to disregard the jury's answer which denied recovery for attorney's fees for work done on appeal. Because we have reversed the award of attorney's fees, we overrule the Lites' cross-point.

■ In their second and third points of error, the Boatmans claim that the trial court erred in overruling their motions for directed verdict and objections to the issue of diversion of surface waters because there was no evidence to support jury questions on that issue or, in the alternative, there was insufficient evidence to support the jury's answers on that issue. The complained-of jury questions and answers were as follows:

Question No. 1:

Do you find that on the occasion in question, Defendants diverted the natural flow of surface waters which proximately

3. *Bell v. State Dept. of Highways and Pub. Transp.*, 945 S.W.2d 292, 294 (Tex.App.—Houston [1st Dist.] 1997, writ denied).

4. *See Id.*

5. *Bexar County v. First Baptist Church*, 846 S.W.2d 554, 561 (Tex.App.—San Antonio 1993, writ denied).

6. *Purcell v. Metropolitan Casualty Ins. Co.*, 260 S.W.2d 134, 139 (Tex.Civ.App.—Fort Worth 1953, no writ).

7. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985).

8. *See Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex.App.—Eastland 1994, no writ).

9. *Citing* Tex. R. App. P. 52(a) (amended 1997) (current version at Tex. R. App. P. 33.1).

10. *Hudspeth v. Hudspeth*, 756 S.W.2d 29, 34 (Tex.App.—San Antonio 1988, writ denied); *see also HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638 (Tex.App.—Austin 1992, writ denied).

caused damage to the property of the Plaintiffs?

Answer: We do.

Question No. 2:

If you found that the Defendants did divert the natural flow of surface waters in such a manner as to damage the property of Plaintiffs, then state whether or not damage will occur in the future to the Plaintiffs' property from the water so diverted?

Answer: We do.

The jury charge defined "surface waters" as follows:

... those [waters] which are diffused over ground from falling rain or melting snows and continue to be such until it reaches some bed or channel in which water is accustomed to flow and ceases to be such when it enters a water course in which it is accustomed to flow.

The Boatmans did not object to the definition of "surface waters" in the charge of this case.

Section 11.086 of the Texas Water Code states that "[n]o person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." [11] This statute imposes a burden on a property owner to receive, and only prohibits diverting or impounding, the natural flow of *surface water*.[12] If the water has been altered by the hands of man so that it flows in greater quantities or is directed or accelerated, then the property owner has the right to divert that water to protect his land.[13] The question before us, then, is whether or not there was evidence that the Boatmans diverted the natural flow of surface water rather than or in addition to water diverted or made more burdensome by acts or industry of man.

In addressing a matter-of-law or legal insufficiency question, this court must examine the record for evidence that supports the finding, while disregarding all evidence to the contrary.[14] If there is no evidence to support the finding, the entire record must be examined to determine whether the proposition contrary to the finding has been conclusively established as a matter of law.[15] In reviewing factual insufficiency, this court is required to consider and weigh all of the evidence in the case, and to set aside the judgment and remand the cause for a new trial if the court concludes that the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust.[16] Even if the evidence might support a different result, since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact.[17] A court is not authorized to interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of the witness' testimony.[18] As long as there is sufficient competent evidence of probative force to support the jury's finding, it must be sustained, and "[wh]ere there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive."[19]

The Boatmans contend that there was only evidence that they diverted water from a man-made culvert; consequently, there was no evidence to support a § 11.086 violation. A careful review of the evidence shows, however, that the Boatman's berms also diverted surface water. Mr. Lites testified that when significant rain fall occurred, the surface wa-

11. TEX. WATER CODE ANN. § 11.086(a) (Vernon Supp.1996).

12. *Mitchell v. Blomdahl*, 730 S.W.2d 791, 794 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

13. *Id.; see also Leber v. Adams*, 370 S.W.2d 243, 244 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.).

14. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

15. *Id.*

16. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

17. *Kratz v. Exxon*, 890 S.W.2d 899, 903 (Tex. App.—El Paso 1994, no writ).

18. *Id.*

19. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947).

ter flowed across the road onto the Boatman property, which was then diverted by the Boatmans' berm. He also stated that in heavy rains, as much water crossed the road as through the culvert. The Lites' expert testified that the surface water being diverted by the Boatmans was damaging the Lites' property. He reviewed a photograph reflecting debris left by the water flow and testified as follows:

> Mr. Adams: ... it indicates the water flowed over the road, which means that the culvert wasn't able to handle everything that was going down to that low area. So, it just pooled up. It backed up and—to the point that it flowed over the road. And that's what you see with this debris.
>
> Boatmans' Attorney: Would that be surface water?
>
> Mr. Adams: That's surface water.

In addition to the testimony of surface water diversion, the Lites introduced several photographs which showed surface water flowing in locations, other than out of the culvert, and being diverted by the Boatmans' berm. Furthermore, the engineer who planned the subdivision's drainage system testified that the natural flow of water in that area, before the property was even developed, always ran through the property which would eventually belong to the Boatmans. He stated that he did not alter the natural flow of the water with drainage ditches or culverts. We hold that there was legally and factually sufficient evidence to support the jury's affirmative finding that the Boatmans diverted the natural flow of surface waters. Point of error two and three are overruled.

█ In point of error four, the Boatmans complain that the trial court erred in submitting questions and rendering judgment awarding exemplary damages because there was no evidence or insufficient evidence to support a submission of gross negligence and an award of exemplary damages. "Gross negligence" means more than momentary thoughtlessness, inadvertence or error of judgment.[20] It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.[21] There are two components in the consideration of gross negligence: 1) an act or omission by the defendant; and 2) the mental state of the defendant.[22] The first element requires an examination of the plaintiff's conduct. The act or omission must have constituted more than unreasonable conduct.

> Objectively, the defendant's conduct must involve an "extreme degree of risk," a threshold significantly higher than the objective "reasonable person" test for negligence. Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff ... Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent.[23]

The "extreme risk" prong of the test for gross negligence is not satisfied by remote possibility of injury or even high probability of minor harm, but rather likelihood of serious injury to plaintiff.[24] Whether or not the act or omission involves extreme risk must be viewed from the defendant's perspective and without the benefit of hindsight.[25] The second element examines the defendant's mental state. This requires a showing that the defendant was subjectively aware of the extreme risk created.[26] The plaintiff must, therefore, put forth evidence to show that the defendant's conduct created an extreme risk of harm and that the defendant was aware of the extreme risk.[27]

**20.** Tex. Civ. Prac. & Rem. Code Ann. § 41.001(5) (Vernon Supp.1995).

**21.** *Id.*

**22.** *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex.1994).

**23.** *Id.* at 22.

**24.** *F.D.I.C. v. Schreiner*, 892 F.Supp. 869 (W.D.Tex.1995).

**25.** *Sears, Roebuck and Co. v. Menegay*, 907 S.W.2d 72, 76 (Tex.App.—Fort Worth 1995, no writ).

**26.** *Id.*

**27.** *Moriel*, 879 S.W.2d at 21, *citing Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993).

The record shows that a mound of dirt, which the Lites defined as a "berm," diverted the surface water off the Boatman's property and onto the Lites' property. The Boatmans admitted that they brought in many loads of dirt and built a "dam" on their property, although they denied building a berm. When the Lites asked the Boatmans to remove the dirt, they refused to do so. Approximately one year prior to the filing of this suit, the Lites hired counsel to write the Boatmans, requesting that they refrain from diverting surface water. Mr. Boatman testified that he ignored the letter and thought it was ridiculous. When further pressed as to why he thought the request was ridiculous, he said "because I'm me and that's the way I think." After the trial court issued a temporary injunction ordering the Boatmans to remove the berm, they did not remove the dirt, but spread it out, further building up their property. When Mr. Lites attempted to talk to Mr. Boatman about the berm and the erosion problems, Mr. Boatman used profanity against him. The erosion caused by the building of the berm covered an area approximately seven feet by twenty feet. The eroded property was located at the extreme corner of the Lites' property opposite from their home and not located within the vicinity of any other structures. On numerous occasions, the Lites attempted to repair the damage done to their land, but were unable to do so.

The Lites cite *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606 (Tex.App.—Houston [14 Dist.]),[28] in which an award of punitive damages was upheld by the Houston Court of Appeals. In that case, the losing party attacked the sufficiency of the evidence, claiming that their actions were neither intentional nor unreasonable. The Court stated that "even if the defendants did not originally intend that their actions result in an impounding of water on [plaintiff's] land, there is really no dispute that they intentionally permitted the impounding to continue."[29] In the court's view, evidence that the defen-

dants failed to desist from the impounding when made aware of the consequences of their actions was sufficient to support an award of punitive damages.

In the instant case, there was evidence that both the Lites and the trial court informed the Boatmans that the diversion of surface water was causing damage to the Lites' property. The Boatmans denied that they had even built a berm, even though there was evidence to the contrary. In addition, there was evidence that the Boatmans did not comply with the temporary injunction to refrain from diverting water from their property. We hold that there was sufficient evidence to support a finding that the Boatmans were subjectively aware that they were creating a risk of damage to the Lites' property.

■ There is a remaining question before us, however. Did the Boatmans' actions constitute an extreme danger of risk of serious harm? Neither the Boatmans nor the Lites cite any authority on this issue. Nevertheless, we are cognizant of the well established law that each and every piece of real property is considered unique.[30] Mr. Lites testified that he did everything in his power to stop the erosion and that the loss of the land was upsetting to him. We hold that the destruction of a sizable portion of real property by erosion was, objectively, serious harm, and that the diversion of surface waters by the Boatmans constituted an extreme danger that that particular harm would occur. We overrule the fourth point of error.

We *reverse* the trial court judgment insofar as it declares that the Lites own certain property in Henderson County, Texas, that the Boatmans violated § 11.086 of the Texas Water Code, and the award of attorney's fees. We *render* judgment that the Lites take nothing in those respects. We *affirm* the remainder of the trial court judgment.

---

**28.** *Bily v. Omni Equities*, 731 S.W.2d 606 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

**29.** *Id.* at 613.

**30.** *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex.App.—Houston [14th Dist.] 1982, no writ).