NO. 12-08-00340-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DR. LEE ROY MATHIS,                                 
§                  APPEAL FROM THE 87TH

APPELLANT

            

V.                                                                      
§                   JUDICIAL DISTRICT COURT      

 

H.E. “BUSTER” BARNES,

APPELLEE                                                                  §                   ANDERSON
COUNTY, TEXAS     







OPINION

            Dr.
Lee Roy Mathis appeals the trial court’s take nothing judgment entered in favor
of Appellee H.E. Buster Barnes.  In two issues, Mathis contends that the
evidence is legally and factually insufficient to support the trial court’s
take nothing judgment and this court should render injunctive relief against
Barnes.  We affirm in part, reverse and remand in part, and dismiss for want of
jurisdiction in part.

 

Background

            Mathis
and Barnes own adjoining property in rural Anderson County, Texas.  Lake Creek
runs through the two properties at a point where Barnes’s property lies
approximately six inches lower in elevation than Mathis’s property.  For some
time, Mathis had sought to cultivate “pristine wetlands” on the portion of his
property close to Barnes’s property.  Due to multiple beaver dams on Mathis’s
property and in spite of seasonal rainfall variations, it was “full of water
year round[,]” with “very limited” seasonal fluctuation.  As a result, the
property was a watering, nesting, and roosting place for waterfowl.  

            In
mid to late 2006, Barnes constructed an earthen road on his property.  The
road, in effect, served as a dam where it crossed Lake Creek.[1] 
According to Barnes’s testimony, he initially incorporated two twenty-eight
inch culverts into the road.  However, even though Barnes testified that he had
constructed numerous roads in the past, he did not consult an engineer
regarding his construction of this road.

            By
October 2006, Lake Creek’s water flow increased and water began to rise on
Barnes’s property upstream of the road.  By November 3, 2006, the water had
crossed the property line between Mathis’s and Barnes’s properties.       

On
November 4, 2006, Mathis contacted Barnes concerning the rising water and asked
him to modify the road to permit sufficient flow of the water to alleviate the
flooding.  Barnes met with Mathis and his son, Rusty, about the problem.  

As
time passed, the water continued to rise.  By mid December, the water was
several feet high at the fence line and had begun to crest at some of the
beaver dams.  Rusty contacted Barnes about the problem, and Barnes responded
that he would add another culvert to the road.  Thereafter, Barnes installed
another twenty-eight inch culvert in the road above the two previously
installed culverts.  In mid to late December 2006, the road gave way to the
waters of Lake Creek.  The waters retreated from Mathis’s property revealing
the remnants of many of the beaver dams that did not survive.  As a result of
the destruction of the beaver dams, the property retains a significantly
smaller amount of water than it once did.  Furthermore, the duck sightings on
or above the property have been greatly reduced.

            Mathis
filed the instant suit on January 26, 2007 alleging that Barnes was liable to
him for nuisance, trespass, negligence, and gross negligence.  Specifically,
Mathis claimed that Barnes’s actions permanently damaged 409.27 acres of his
land, thereby reducing its fair market value, which resulted in actual
damages.  Mathis further sought injunctive relief.  The trial court granted
Mathis both a temporary restraining order and, later, a temporary injunction,
prohibiting Barnes from repairing the breached road across Lake Creek.  The
matter proceeded to a jury trial.  At trial, Barnes did not dispute that he
built the road across Lake Creek.  The parties presented conflicting evidence
regarding the monetary value of the property before and after the flooding.  The
testimony can be summarized as follows:  Mathis put on testimony of various
witnesses supporting that the value of the property was greatly diminished;
Barnes’s witness, a real estate appraiser, testified that the value of the
property was the same both before and after the incident.

            Ultimately,
the jury found that Barnes was not liable for nuisance, trespass, negligence,
or gross negligence.  Thereafter, the trial court entered a take nothing
judgment against Mathis.  Mathis filed a motion for new trial, which the trial
court denied.  This appeal followed.

 

Legal Sufficiency

            In
his first issue, Mathis argues that the evidence is legally and factually
insufficient to support the jury’s finding of no liability with regard to his
causes of action for nuisance, trespass, and negligence.  Mathis further argues
that the evidence conclusively establishes his claim for gross negligence.  

Standard
of Review

If
a party with the burden of proof challenges the legal sufficiency of an adverse
finding, we must determine whether the complaining party has demonstrated on
appeal that the evidence establishes, as a matter of law, all vital facts in
support of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001).  In a “matter of law” challenge, we first examine the record
for evidence that supports the finding, while ignoring all evidence to the
contrary.  Id.  If there is no evidence to support the finding,
we will examine the entire record in order to determine whether the contrary
proposition is established as a matter of law.  Id.  We will
sustain the issue if the contrary proposition is conclusively established.  Id.
 The final test for legal sufficiency must always be whether the evidence at
trial would enable reasonable and fair minded people to reach the verdict under
review.  City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005).  In making this determination, we must credit favorable evidence if a
reasonable finder of fact could, and disregard contrary evidence unless a
reasonable finder of fact could not.  Id. at 827.  The finder of
fact is the sole judge of the credibility of the witnesses and the weight to be
assigned to their testimony.  See Canal Ins. Co. v. Hopkins, 238
S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing City of
Keller, 168 S.W.3d at 819).  The finder of fact is free to believe one
witness and disbelieve another, and reviewing courts may not impose their own
opinions to the contrary.  Id.  Accordingly, we must assume that
the finder of fact decided all credibility questions in favor of the findings
if a reasonable person could do so.  Id.  If a reasonable finder
of fact could have done so, we must assume that the finder of fact chose what
testimony to disregard in a way that favored the findings.  See Canal,
238 S.W.3d at 557 (citing City of Keller, 168 S.W.3d at 820).  A
finder of fact “may disregard even uncontradicted and unimpeached testimony
from disinterested witnesses” where reasonable.  Canal, 238
S.W.3d at 557 (quoting City of Keller, 168 S.W.3d at 819–20).

Moreover,
it is within the finder of fact’s province to resolve conflicts in the
evidence.  Canal, 238 S.W.3d at 557 (citing City of Keller,
168 S.W.3d at 820).  Consequently, we must assume that, where reasonable, the
finder of fact resolved all conflicts in the evidence in a manner consistent
with the findings.  Id.  Where a reasonable finder of fact could
resolve conflicting evidence either way, we must presume the finder of fact did
so in favor of the findings.  Canal, 238 S.W.3d at 557 (citing City
of Keller, 168 S.W.3d at 821).  Where conflicting inferences can be
drawn from the evidence, it is within the province of the finder of fact to
choose which inference to draw, so long as more than one inference can
reasonably be drawn.  Id. Therefore, we must assume the finder of
fact made all inferences in favor of the findings if a reasonable person could
do so.  Id.

Nuisance

            Mathis
first argues that the evidence conclusively establishes that Barnes is liable
to him for creating a private nuisance.  A nuisance is a condition that
substantially interferes with the use and enjoyment of land by causing
unreasonable discomfort or annoyance to persons of ordinary sensibilities
attempting to use and enjoy it.  Schneider Nat'l Carriers, Inc. v. Bates,
147 S.W.3d 264, 269 (Tex. 2004); Warwick Towers Council of So-Owners v.
Warwick, L.P., 298 S.W.3d 436, 444 (Tex. App.–Houston [14th Dist.]
2009, no pet.).  “Nuisance” refers to a kind of damage done, rather than to any
particular type of conduct.  City of Tyler v. Likes, 962 S.W.2d
489, 504 (Tex. 1997).  A private nuisance affects an individual or a small
number of individuals rather than the public at large.  See Walker v.
Tex. Elec. Serv., 499 S.W.2d 20, 27 (Tex. App.–Fort Worth 1973, no writ). 
An actionable nuisance may arise from an invasion of another's interests
attributable to activity that is intentional, negligent, or abnormal and out of
place in its surroundings.  Warwick, 298 S.W.2d at 444.  

To
prove an action for private nuisance, the plaintiff must establish that the
nuisance caused some injury.  See Walton v. Phillips Petroleum Co.,
65 S.W.3d 262, 270 (Tex. App.–El Paso 2001, pet. denied).  A nuisance may
result in two types of injury:  (1) physical harm to the plaintiff’s property,
as by the encroachment of a damaging substance or by the property’s destruction
or (2) physical or emotional harm to the plaintiff.  See Aguilar v.
Morales, 162 S.W.3d 825, 836 (Tex. App.–El Paso 2005,
pet. denied); Union Pac. Res. v. Cooper, 109 S.W.3d 557, 560
(Tex. App.–Tyler 2003, pet. denied); Walton, 65 S.W.3d at 270.  A
nuisance that impairs comfortable enjoyment of real property may give rise to
damages for personal discomfort and annoyance.  See Cain v. Rust Indus.
Cleaning Servs., 969 S.W.2d 464, 470 (Tex. App.–Texarkana 1998, pet.
denied).  A plaintiff is injured by a nuisance when the plaintiff suffers
emotional harm from the deprivation of the enjoyment of his property, such as
by fear, apprehension, offense, or loss of peace of mind.  See id. 


In
the case at hand, Question 2 of the court’s charge made the following inquiry
of the jury:

 

Did H.E. “Buster” Barnes create a
nuisance which caused damage to Dr. Lee Roy Mathis’[s] land?

 

A “nuisance” substantially
interferes with the use and enjoyment of land by causing unreasonable
discomfort or annoyance to persons of ordinary sensibilities attempting to use
and enjoy the land.  A “nuisance” may occur as:

 

1.       Physical
harm to property;

 

2.       Physical
harm to a person or his or her property, such as an assault to his or her
senses or by other personal injury; and/or

 

3.       Emotional
harm to a person from the deprivation of the enjoyment of his or her property,
such as by fear, apprehension, offense[,] or loss of peace of mind.

 

 

The jury
answered “No” in response to Question 2.

Barnes
contends that the jury was entitled to find that Barnes’s action did not damage
Mathis’s land.  In support of his contention, Barnes notes that (1) Mathis’s
pleadings allege that Barnes’s actions permanently damaged 409.27 acres of his
land, thereby reducing its fair market value, (2) Mathis submitted Question 2,
which makes reference to a nuisance, that “caused damage,” and (3) finally,
Question 5 of the court’s charge inquires of the jury concerning the “market
value” of Mathis’s property immediately before and immediately after the
occurrence in question.  Thus, according to Mathis, the jury was entitled to
conclude, for the purpose of its answer to Question 2 that Barnes’s creation of
a nuisance did not “cause damage” to Mathis’s land if it determined that the
nuisance did not result in a reduction of the land’s fair market value.  We
disagree.

The
word “damage” means “injury” or “loss” caused by the negligence, design, or
accident of one person to another in respect to the latter’s person or
property.  See Black’s Law
Dictionary 389 (6th ed. 1990).  The word “damage” is to be distinguished
from its plural, “damages,” which means a compensation in money for a loss or
damage.  See id.  We understand “damage” to encompass every
loss or diminution of what is a man’s own, occasioned by the fault of another. Id. 
Mathis pleaded “permanent” injury.  However, no liability question in the
court’s charge made inquiry concerning any permanent damage or injury. 
Furthermore, Question 5’s inquiry concerning market value could not serve to
define “damage” for the jury because the jury was instructed to answer Question
5 only if it answered “yes” to Questions 1, 2, or 3.  See Herrera v.
Balmorhea Fedders, Inc., 539 S.W.2d 84, 87 (Tex. Civ. App.–El Paso
1976, writ ref’d n.r.e.) (court presumes jury followed trial court’s
instructions in charge).

In
the instant case, Question 2 inquired whether Barnes created a nuisance that
caused damage to Mathis’s land.  The evidence of record is uncontradicted that
(1) Barnes constructed the road across Lake Creek, (2) the road Barnes
constructed disrupted the creek’s natural flow, (3) the waters of Lake Creek
rose upstream of the road and eventually crossed the Barnes-Mathis property
line, flooding a portion of Mathis’s land.  Furthermore, the evidence is conclusive
that Mathis had owned the property for approximately forty years and used the
land in question as a site on which to cultivate wetlands, which facilitated
his further use of the land as a watering, nesting, and roosting place for
waterfowl.  Finally, the evidence is uncontroverted that, after the flood
waters receded, the beaver dams that once occupied the property were no longer
functional.  As a result, the property retains a significantly smaller amount
of water than it once did and duck sightings on or above the property have been
greatly reduced.  Thus, based on our review of the record, we conclude that the
evidence conclusively established that Barnes created a nuisance that caused
physical damage to Mathis’s property.  Consequently, we hold that the evidence
is legally insufficient to support the jury’s “No” answer to Question 2 of the
court’s charge. 

Trespass

Mathis
next argues that the evidence conclusively establishes that Barnes is liable to
him for trespass.[2] 
Question 3 of the court’s charge inquired of the jury concerning trespass as
follows:

Did H.E. “Buster” Barnes cause damage to Dr.
Mathis’[s] land by trespassing on Dr. Lee Roy Mathis’[s] land.

 

A trespass is any unauthorized intrusion or invasion
of private premises or land of another, committed when a person enters
another’s land without consent; or alternatively, unauthorized entry upon land
of another.  For purposes of a trespass claim, entry need not be in person, but
may be made by causing or permitting something to cross the boundary of the
property of another.

 

The jury
answered “No” in response to Question 3.

Trespass
to real property is defined as an unauthorized entry upon the land of another. 
See Cain v. Rust Indus. Cleaning Servs., 969 S.W.2d 464, 470
(Tex. App.–Texarkana 1998, pet. denied); Stone Res. v. Barnett,
661 S.W.2d 148, 151 (Tex. App.–Houston [1st Dist.] 1983, no writ).[3] 
Every unauthorized entry is a trespass even if no damage is done.  Aguilar
v. Trujillo, 162 S.W.3d 839, 851 (Tex. App.–El Paso 2005, pet. denied)
(citing Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 827
(Tex. 1997)); see also Johnson v. Phillips Petroleum Co., 93
S.W.2d 556, 558–59 (Tex. App–Amarillo 1936, no writ) (presumed that some injury
resulted from trespass even if damages are nominal because every unauthorized
entry on property considered a trespass).  A trespass can be either by entry of
a person on another’s land or by causing or permitting a thing to cross the
boundary of the premises.  Aguilar, 162 S.W.3d at 851. 

It
is undisputed that Mathis owned land adjoining Barnes’s land and that the
properties were divided by a fence.  As set forth above, the evidence is
uncontroverted that (1) Barnes constructed the road across Lake Creek, (2) the
road Barnes constructed disrupted the creek’s natural flow, (3) the waters of
Lake Creek rose upstream of the road and eventually crossed the Barnes-Mathis
property line, flooding a portion of Mathis’s land.  The record is further
conclusive that Barnes was aware that the waters of Lake Creek had encroached
on Mathis’s property upstream of the road he constructed.  Based on our review
of the record, we conclude that the evidence at trial conclusively established
that the road Barnes constructed caused the waters of Lake Creek to enter upon
Mathis’s property.  Damage or injury is presumed as a result of the trespass.  See
Johnson, 93 S.W.2d at 558–59.  Consequently, we hold that the
evidence is legally insufficient to support the jury’s “No” answer to Question
3 of the court’s charge.

Negligence

Mathis
next argues that the evidence conclusively establishes that Barnes is liable to
him for negligence.  Question 1 of the court’s charge inquired of the jury
with regard to negligence as follows:

 

Did the negligence, if any, of H.E.
“Buster” Barnes proximately cause the damage, if any, to Dr. Lee Roy Mathis’[s]
land?

 

 

The jury answered “No” in
response to Question 1.

Governing
Law

The
elements of a negligence cause of action are the existence of a legal duty, a
breach of that duty, and damages proximately caused by the breach.  Roberts
v. TXU Energy Retail Co. LP, 171 S.W.3d 901, 903 (Tex. App.–Beaumont
2005, no pet.).  A legal duty is breached when a defendant does not meet
the required standard of care.  On appeal, Mathis cites Texas Water Code,
section 11.086, which he contends imposed a legal duty upon Barnes not to
divert or impound surface water such that it damages the land of another. 
See Tex. Water Code Ann. §
11.086 (Vernon 2008). Ordinarily, if the duty imposed by a statute creates
civil liability for its violation, the standard of care will be defined by the
statute.  See, e.g., Sheppard v. Judkins, 476 S.W.2d
102, 109 (Tex. App.–Texarkana 1971, writ ref’d n.r.e.) (violation of statute
that requires person to stop at stop sign constitutes negligence per se). 
Thus, the jury would ordinarily be asked not whether the defendant acted
reasonably, but only whether the defendant violated the statute.  See Carter
v. William Sommerville & Son, Inc., 584 S.W.2d 274, 278 (Tex.
1979).  However, in the instant case, the jury was never asked to consider
whether Barnes, by his conduct, violated section 11.086.  Rather, the jury was
instructed concerning the duty to use ordinary care.  Because no party has challenged
the trial court’s submission of Question 1 on appeal, we will conduct our
analysis of the legal sufficiency of the evidence to support the jury’s answer
to Question 1 with regard to the charge given the jury.  See Wolff,
94 S.W.3d at 530.

            “Ordinary care,” is
defined as what a person of ordinary prudence would or would not have done
under the same or similar circumstances.  See Colvin v. Red Steel Co., 682 S.W.2d 243, 245 (Tex.
1984).  In deciding whether there is a common law duty, courts apply the
risk-utility test.  See Foster v. Denton Indep. Sch. Dist., 73
S.W.3d 454, 465 (Tex. App.–Fort Worth 2002, no pet.).  The factors used when
applying the risk-utility test are the risk, foreseeability, and likelihood of
injury balanced against the social utility of the actor’s conduct, the
magnitude of the burden of guarding against the injury, and the consequences of
placing the burden on the defendant.  See Nabors Drilling, U.S.A.,
Inc. v. Escoto, 288 S.W.3d 401, 405 (Tex. 2009).  When these factors
are balanced, the most important factor to consider is the foreseeability of
the risk.  See El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex.
1987).  

Foreseeability
requires only that the general danger be foreseeable, not the exact sequence of
events that produced the harm.  See Mellon Mortg. Co. v. Holder,
5 S.W.3d 654, 655 (Tex. 1999).  The test for foreseeability is whether (1) the
injury is of a general character that might reasonably have been anticipated
and (2) the injured party is situated in relation to the wrongful act so that
injury to him or one similarly situated might reasonably have been foreseen.  See
id.

The
components of proximate cause are (1) cause-in-fact and (2) foreseeability.  See
Western
Invs. v. Urena,
162 S.W.3d 547, 551 (Tex. 2005); HIS
Cedars Treatment Ctr. v. Mason,
143 S.W.3d 794, 798 (Tex. 2004).  The test for cause-in-fact, or “but for”
causation, is whether the negligent act or some omission was a substantial
factor in bringing about injury and whether the injury would have occurred
without the act or omission.  Western
Invs., 162
S.W.3d at 551; Mason, 143 S.W.3d at 799.  The
evidence must be sufficient for the jury to determine within a reasonable
probability that the plaintiff’s injury would not have occurred but for the
defendant’s negligence.  See Lenger
v. Physician’s Gen. Hosp., Inc.,
455 S.W.2d 703, 706 (Tex. 1970).  There is no cause-in-fact when the
defendant’s negligence did nothing more than furnish a condition that made the
injury possible or when the defendant’s conduct is too remotely connected with the
plaintiff’s injury.  See Mason, 143 S.W.3d at 799.  To prove foreseeability, the
plaintiff must establish that a person of ordinary intelligence should have
anticipated the danger created by the negligent act or omission.  See Doe v. Boys Clubs, 907 S.W.2d 472, 478 (Tex.
2005); PPC
Transp. v. Metcalf,
254 S.W.3d 636, 642 (Tex. App.–Tyler 2008, no pet.).  Foreseeability requires
only that (1) the injury be of a general character that might reasonably have
been anticipated and (2) the injured party be situated in relation to the
wrongful act so that the injury to him or to someone similarly situated might
reasonably have been foreseen.  See Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546, 551 (Tex.
1985); PPC
Transp., 254
S.W.3d at 642.

Finally,
with regard to damage, we iterate that the term “damage,” which was not defined
in the court’s charge, means every
loss or diminution of what is a man’s own, occasioned by the fault of
another.”  See Black’s Law
Dictionary 389.  

Breach
of Legal Duty

We first
consider whether Barnes breached a legal duty owed to Mathis.  Here, the record
is conclusive that the area between the Barnes and Mathis properties was
“bottomland” with Mathis’s land lying only six inches higher in elevation than
Barnes’s.  The record further conclusively indicates that Barnes knew the land
in question had flooded numerous times between the time when he purchased the
property in 2005 and the time he built the road in 2006.  Finally, it is
uncontroverted that subsequent to Barnes’s constructing the road, the water
level rose upstream of the road and flooded Mathis’s property.  

However,
the record also indicates that Barnes constructed the road across Lake Creek when
the creek bed was dry.  Further, there was evidence before the jury that Barnes
had previous experience
building roads utilizing culverts.  Additionally, the evidence reflects that Barnes
employed drainage pipes in his construction of the road at issue so as to allow
the waters of Lake Creek to pass through it.  There was evidence pertaining to
whether anywhere from one to four twenty-eight inch culverts would permit
adequate flow of the waters of Lake Creek.  However, there is, at best,
conflicting evidence concerning whether a person of ordinary prudence would
have foreseen, as the record reflects Barnes did not, that the culverts he
employed to allow for the passage of Lake Creek’s waters would be less than
adequate to prevent flooding upstream of the road.  Moreover, there is, at
best, conflicting evidence supporting that a person of ordinary prudence would
have constructed the road so as to allow for more drainage than did Barnes.

In sum,
the record does not conclusively demonstrate that an ordinarily prudent person
would have foreseen that the construction of an earthen road across a creek
bed, where measures were taken to allow for passage of the creek waters through
the road, would, in spite of the measures taken, flood the neighboring
property.  Therefore, we conclude that the evidence does not conclusively
demonstrate that Barnes breached his duty of ordinary care owed to Mathis.  Accordingly,
we hold that the jury’s answer to Question 1 was not legally insufficient.

 

 

Gross Negligence

            Mathis next argues
that the evidence conclusively establishes that Barnes is liable to him for gross
negligence.  Question 4 of the court’s charge inquired of the jury
concerning gross negligence as follows:

 

                Do you find by clear and
convincing evidence that the damage, if any, to Dr. Lee Roy Mathis’[s] land
resulted from gross negligence?

 

“Clear and
convincing evidence” means the measure or degree of proof that produces a firm
belief or conviction of the truth of the allegations sought to be established.

 

“Gross
negligence means an act or omission by H.E. “Buster” Barnes, 

 

a)       Which when
viewed objectively from the standpoint of H.E. “Buster Barnes at the time of
its occurrence involves an extreme degree of risk, considering the probability
and magnitude of the potential harm to others; and

 

b)       Of which H.E.
“Buster” Barnes has actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or
welfare of others.

 

 

Gross
negligence includes two elements: (1) viewed objectively from the actor's
standpoint, the act or omission must involve an extreme degree of risk,
considering the probability and magnitude of the potential harm to others, and
(2) the actor must have actual, subjective awareness of the risk involved, but
nevertheless proceed in conscious indifference to the rights, safety, or
welfare of others.  Mobil Oil Corp. v. Ellender, 968 S.W.2d 917,
921 (Tex. 1998); see Transportation Ins. Co. v. Moriel,
879 S.W.2d 10, 23 (Tex. 1994).  Evidence of simple negligence is not enough to
prove either the objective or subjective elements of gross negligence.  Ellender,
968 S.W.2d at 921.  Under the first element, “extreme risk” is not a remote
possibility of injury or even a high probability of minor harm, but rather the
likelihood of serious injury to the plaintiff.  Id.  Under the
second element, actual awareness means that the defendant knew about the peril,
but his acts or omissions demonstrated that he did not care.  Id.
(citing Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 326
(Tex. 1993)).  Circumstantial evidence is sufficient to prove either element of
gross negligence.  See Moriel, 879 S.W.2d at 22-23; Alexander,
868 S.W.2d at 327.  Mathis cites Boatman v. Lites, 970 S.W.2d 41
(Tex. App.–Tyler 1998, no pet.) and Bily v. Omni Equities, Inc.,
731 S.W.2d 606 (Tex. App.–Houston [14th Dist.] 1987, writ ref’d n.r.e.) in
support of his proposition that even where a defendant did not originally
intend that his actions result in an impounding of water upon the plaintiff’s
land, the second element of gross negligence is supported where the plaintiff
intentionally permitted the impounding to continue.  

In Boatman,
the Boatmans built a “berm” that diverted surface water off of their property
and onto the Liteses’ neighboring property.  See Boatman, 970
S.W.2d at 46.  When the Liteses asked the Boatmans to remove the berm, they
refused to do so.  Id.  This court summarized the ensuing
exchanges between the parties as follows:

 

            Approximately
one year prior to the filing of this suit, the [Liteses] hired counsel to write
the Boatmans, requesting that they refrain from diverting surface water. Mr.
Boatman testified that he ignored the letter and thought it was ridiculous.
When further pressed as to why he thought the request was ridiculous, he said
“because I'm me and that's the way I think.” After the trial court issued a
temporary injunction ordering the Boatmans to remove the berm, they did not
remove the dirt, but spread it out, further building up their property. When
Mr. Lites attempted to talk to Mr. Boatman about the berm and the erosion
problems, Mr. Boatman used profanity against him. The erosion caused by the
building of the berm covered an area approximately seven feet by twenty feet.
The eroded property was located at the extreme corner of the [Liteses'] property
opposite from their home and not located within the vicinity of any other
structures. On numerous occasions, the [Liteses] attempted to repair the damage
done to their land, but were unable to do so.

 

 

Id.  Considering the foregoing, this
court concluded that (1) there was evidence that both the Liteses and the trial
court informed the Boatmans that the diversion of surface water was causing
damage to the Liteses’ property, (2) the Boatmans denied that they had even
built the berm despite evidence to the contrary, and (3) there was evidence
that the Boatmans did not comply with the temporary injunction to refrain from
diverting water from their property.  See id. 
Accordingly, the court held that there was sufficient evidence to support a
finding that the Boatmans were subjectively aware that they were creating a
risk of damage to the Liteses’ property.  See id.

            Bily
likewise involved the diversion of surface waters by Omni onto Bily’s
property.  See Bily, 731 S.W.2d at 609.  There, it was undisputed
that Bily informed Omni and its owners, the Smiths, that their construction had
blocked drainage from his property.  Id. at 614.  Further, Bily’s
attorney provided Omni with a copy of section 11.086 of the Texas Water Code.  Id. 
W.T. Smith, the majority shareholder of Omni who oversaw its operations,
admitted that he made no effort to correct the problem other than to file
criminal complaints against Bily after the temporary injunction had been
granted.  See id.  The court of appeals held that this was “some
evidence, and factually sufficient evidence,” to support a finding that Omni
and the Smiths acted with conscious indifference to Bily’s rights.  See
id.  

            In the instant case,
it is undisputed that Barnes was aware that the waters of Lake Creek had risen
upstream of the road he constructed and had crossed the Barnes-Mathis property
line, flooding a portion of Mathis’s land.  Barnes testified that he would
never have constructed the road across Lake Creek had he known it would cause
damage to Mathis’s property.  However, unlike the defendants in Bily
and Boatman, the record here indicates that Barnes cooperated
with Mathis concerning the flooding problem.  Furthermore, Barnes testified
that he installed an additional culvert in order to alleviate the flooding on
Mathis’s land, a remedy he had previously discussed with Rusty.  Ultimately,
Barnes’s attempt to solve the problem was unsuccessful, but his attempt is nonetheless
some evidence that would reasonably support the jury’s finding that he did not
act with conscious indifference with regard to the flooding of Mathis’s
property.  As such, we conclude that there was not conclusive evidence of gross
negligence.  Accordingly, we hold that the jury’s “No” answer to Question 4
should not be disturbed.  

 

Factual Sufficiency

We test
the factual sufficiency of the evidence by examining the entire record to
determine whether a finding is clearly wrong and unjust.  See Kinder Morgan
North Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427, 437 (Tex.
App.–Texarkana 2006, no pet.).  When considering a factual sufficiency
challenge to a jury’s verdict, we must consider and weigh all the evidence, not
just that evidence which supports the verdict.  See Mar. Overseas
Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  We can set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence
that the verdict is clearly wrong and unjust.  Id.; Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).  We are not a fact finder.  See
Justiss, 202 S.W.3d at 437.  Accordingly, we may not pass on the
witnesses’ credibility or substitute our judgment for that of the jury, even if
the evidence would clearly support a different result.  See Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Ellis,
971 S.W.2d at 407.  If we find the evidence is factually insufficient, we must
clearly state why the jury's finding is insufficient or is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

In his
brief, Mathis iterates the evidence underlying the damage he sustained as well
as the evidence concerning the drainage methods Mathis employed in his
construction of the road.  Mathis further notes that Jerry Fontaine, a civil
engineer, testified that even four twenty-eight inch culverts would have been
inadequate to handle the water flow on Lake Creek.  

We have
examined the entirety of the record; we have considered and weighed all of the
evidence.  In so doing, we are mindful that we may not pass on the witnesses’
credibility or substitute our judgment for that of the jury, even if the
evidence would clearly support a different result.  See Jackson,
116 S.W.3d at 761.  Based on our review of the record, we have not determined
that any evidence tending to contradict the evidence supporting the jury’s
findings, including Fontaine’s testimony, is of such character so as to cause
us to conclude that the jury’s “No” answer to Question 1 is clearly wrong and
unjust.  Thus, we hold that the evidence is not factually insufficient to
support the jury’s “No” answer to Question 1.  

 

Summation of Issue 1

            We have concluded
that the evidence is legally insufficient to support the jury’s “No” answer to
Questions 2, and 3 of the court’s charge.  We have further held that the jury’s
“No” answers to Questions 1 and 4 should not be disturbed.  Accordingly, Mathis’s first issue is sustained in
part and overruled in part.[4]

 

Injunctive Relief

            In
his second issue, Mathis argues that because the evidence conclusively
establishes his claims, we should issue injunctive relief to prevent any future
impoundment of the surface waters.  We initially note that Mathis has neither
cited authority nor made argument in support of his second issue.  See Tex. R. App. P. 38.1(i).  Thus, Mathis
has waived the issue. 

Even
so, we note that our authority to issue writs of injunction is limited to
occasions where doing so is necessary to enforce our jurisdiction.  See Tex. Gov’t Code Ann. § 22.221(a)
(Vernon 2004); Holloway v. Fifth Court of Appeals, 767 S.W.2d
680, 683 (Tex.1989) (purpose of writ of injunction is to enforce or protect
appellate court's jurisdiction); In re Sheshtawy, 161 S.W.3d 1, 1
(Tex. App.–Houston [14th Dist] 2003, orig. proceeding). We may also grant
injunctive relief to preserve the subject matter of a pending appeal or if a
failure to grant relief would result in the appeal becoming moot.  See Becker
v. Becker, 639 S.W.2d 23, 24 (Tex. App.–Houston [1st Dist.] 1982, orig.
proceeding).  We do not have jurisdiction to issue a writ of injunction merely
to preserve the status quo or prevent loss or damage to one of the parties
during the appeal. Id.; Pace v. McEwen, 604 S.W.2d
231, 233 (Tex. Civ. App.–San Antonio 1980, orig. proceeding).  Thus, even had
Mathis not waived the issue, we are without jurisdiction to grant the
injunctive relief Mathis requests.  

 

Conclusion

            We
have sustained Mathis’s first issue in part and overruled it in part.  We lack
jurisdiction to grant the relief requested in Mathis’s second issue.  Mathis
has prayed that we reverse the trial court’s judgment, render judgment on
liability, and remand the matter for a new trial on damages only.  Because
liability is contested, we cannot order a separate trial solely on damages.  See
Tex. R. App. P. 44.1(b). 
Accordingly, we reverse the trial court’s judgment with regard to
Mathis’s causes of action for nuisance and trespass and remand
those causes of action for a new trial.  We dismiss Mathis’s
request for injunctive relief for want of jurisdiction and affirm
the remainder of the trial court’s judgment.

 

 

                                                                                                Sam Griffith

                                                                                                        
Justice

 

 

Opinion delivered July 14, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









[1] The parties’ terminology varies
with regard to Barnes’s construction across Lake Creek.  For ease of reference,
we refer to Barnes’s structure as the “road.”  The record reflects that at the
time the road was constructed, Lake Creek was dry at the construction site.  





[2] An action can be both a trespass
and a nuisance.  See Rankin v. FPL Energy, LLC, 266 S.W.3d 506,
509 (Tex. App.–Eastland 2008, no pet.).   





 

[3] We recognize that the entry must
be physical, intentional, and voluntary.  See Wilen v. Falkenstein,
191 S.W.3d 791, 798 (Tex. App.–Fort Worth 2006, pet. denied).   However, the
definition submitted to the jury does not contain this element, and the
submission of Question 3 has not been challenged on appeal.  As such, we do not
include it in our consideration of the sufficiency of the evidence.  See
St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2002) (when
party in civil case raises proper objection to improper jury charge or
instruction, appellate court measures sufficiency of evidence against jury
charge or instruction that should have been given; if no objection made, or if
incorrect objection made, appellate court measures sufficiency of evidence
against jury charge or instruction actually given).





[4] Because we have held that the evidence is legally
insufficient to support the jury’s “No” answer to Questions 2 and 3 of the
court’s charge, we need not consider Mathis’s arguments concerning the factual
sufficiency of the evidence with regard to these findings.  See Tex. R. App. P. 47.1.